**Jack LAMBERG, individually and as Executor under the Will of Ruth N. Wood, also known as Ruth I. Wood, et al., Plaintiffs-Appellants,**

**v.**

**Robert J. CALLAHAN, as Executor under the Will of Ernest Wood, et al., Defendants-Appellees.**

**No. 463, Docket 71–1916.**

United States Court of Appeals, Second Circuit.

Argued Jan. 25, 1972.

Decided Feb. 17, 1972.

Sidney Vogel, Norwalk, Conn. (Vogel & Sigsway, Norwalk, Conn., on the brief), for plaintiffs-appellants.

John Keogh, Jr., Norwalk, Conn. (Keogh, Candee & Burkhart, Norwalk, Conn., on the brief), for defendants-appellees.

Before FRIENDLY, Chief Judge, and MOORE and MANSFIELD, Circuit Judges.

MANSFIELD, Circuit Judge:

In this diversity suit by the executor and beneficiaries of the estate of a wife, Ruth N. Wood ("Ruth"), against the executor and beneficiaries of the estate of her husband, Ernest Wood ("Ernest"), for breach of a contract to make mutual,

reciprocal, irrevocable wills, plaintiffs appeal from a judgment in favor of defendants. For the reasons stated below we affirm.

The essential facts are undisputed.[1] On August 26, 1959, Ruth N. Wood, a resident of Norwalk, Conn., executed a will at the office of an attorney, Charles Belous, in Queens County, New York, which was witnessed by Belous, who has since died, and by one Madeline Weitz, who could not be located by the parties to this suit. Under her will she devised her estate to her husband, Ernest, or in the event that he predeceased her, to her brother, Dr. Arthur C. Hehn, after certain specific bequests to Jack Lamberg, who is named as executor, to the Lutheran Church of the Holy Trinity, to Emma Wood (Ernest's sister), and to Mrs. Maita Schulman. Paragraph "Fifth" of her will provided: "This will is made with the express understanding that my husband, Ernest Wood, will execute a similar, reciprocal will." Her will was valid under New York law, where two witnesses are sufficient, N.Y. Estates, Powers and Trusts Law § 3–2.1(a) (4) (McKinney 1967), and also in Connecticut, which requires three witnesses but has provided by statute that a will which is valid where executed will be effective "to pass any estate of the testator situated" in Connecticut. Conn.Gen.Stats.Ann. § 45–161 (West 1960).

A carbon copy of a purported reciprocal will bearing the same date and signed by Ernest Wood is in almost identical language. It provides that his estate is to go to his wife Ruth or if she should predecease him, to the same beneficiaries as are named in his wife's will and in the same amounts. Jack Lamberg is also named as executor of his estate. This will, however, was typed on a different machine than Ruth's will. It was found invalid by the district court —a finding not here challenged—for the

reason that the two persons shown as witnessing it denied that they had done so.

On November 24, 1964, Ruth died and her will was later probated in the Probate Court for the District of Norwalk, Connecticut ("Probate Court"). On January 27, 1965, Ernest, who had succeeded to her estate in major part as the surviving joint owner of real property and in minor part under her will, executed a valid will, revoking all previous wills made by him and leaving his estate to his sister or, if she should predecease him, equally to Selina Merrell[2] and Clara F. Donovan, who are named as defendants in this action. The will named Robert J. Callahan, also a defendant, as executor.

On July 2, 1966, Ernest died and his 1965 will was admitted to probate in the Probate Court, Callahan qualifying as executor of his estate. Within the time prescribed by Connecticut law plaintiff Jack Lamberg, executor and beneficiary under Ruth's will, together with two other beneficiaries under her will, Dr. Hehn and Mrs. Schulman, presented to executor Callahan their claims to the effect that by reason of Ernest's breach of his contract to make a reciprocal and irrevocable will, Callahan should be directed to pay over his estate to them in accordance with the terms of the alleged obligation. When their claims were disallowed by Callahan, they instituted this action, invoking diversity jurisdiction, plaintiffs being residents of New York and Pennsylvania and defendants being residents of Connecticut.

The complaint alleges that on August 26, 1959, Ruth and Ernest made an agreement to execute mutual and reciprocal wills that would not be revoked, which were thereupon executed and that in breach of the agreement Ernest executed his January 27, 1965 will, thereby depriving plaintiffs of their rights as

---

1. Since the district court's opinion, which sets forth the material facts, is unpublished, we summarize them here.

2. The careful reader will notice that Mrs. Merrell's name is spelled Merrill in the case heading; this discrepancy is unexplained.

beneficiaries under the agreement. For relief plaintiffs seek a judgment declaring the 1965 will and the probate of it in the Probate Court to be null and void, an injunction against distribution of Ernest's estate to any persons other than those specified by the federal district court, an order directing all parties to consent to the probate of Ernest's purported August 26, 1959 will, the impressment of a constructive trust upon all assets of his estate, and $150,000 damages.

After raising *sua sponte* the question of whether the federal court had subject matter jurisdiction, Judge Timbers, then sitting as a district judge, was satisfied by the parties that by virtue of the claim for damages a "sufficient threshold showing of subject matter jurisdiction" had been made. See Memorandum Decision and Order dated January 3, 1969. The case was tried before Judge Lumbard of this Court, sitting by designation, who received the evidence submitted by the parties, most of which was not disputed. In an unpublished Memorandum Decision dated August 25, 1971, he decided that plaintiffs had failed to meet their burden of establishing by clear evidence the existence of a contract between Ruth and Ernest to make mutual wills which would not be revoked.

At the outset we face the question of whether, notwithstanding formal compliance with the conditions for federal jurisdiction under 28 U.S.C. § 1332(a) (diversity of citizenship and a matter in controversy exceeding $10,000) a federal court should assume jurisdiction over this action between executors and beneficiaries of two estates, each of which is in the custody of the state probate court. It has long been settled by the Supreme Court that federal equity jurisdiction will not be entertained over a suit to set aside a will or the probate of a will, or over similar disputes that would be incidental or ancillary to the *in rem* administration of an estate in state probate custody, since the effect would be to interfere with the performance of the probate court's functions and with its control over the property. See Sutton v. English, 246 U.S. 199, 205, 38 S.Ct. 254, 62 L.Ed. 664 (1918); Case of Broderick's Will, 88 U.S. [21 Wall.] 503, 509, 22 L.Ed. 599 (1874). On the other hand, federal diversity jurisdiction may be assumed over a suit to enforce a claim *in personam* against an executor which will not disrupt the probate court's administration of the estate. Waterman v. Canal-Louisiana Bank & Trust Co., 215 U.S. 33, 43, 30 S.Ct. 10, 54 L.Ed. 80 (1909); Wright, Federal Courts § 25, at 85 (1970).

> "It is true that a federal court has no jurisdiction to probate a will or administer an estate, the reason being that the equity jurisdiction conferred by the Judiciary Act of 1789, [1 Stat. 73,] and § 24(1) of the Judicial Code, which is that of the English Court of Chancery in 1789, did not extend to probate matters. [citations omitted] But it has been established by a long series of decisions of this Court that federal courts of equity have jurisdiction to entertain suits 'in favor of creditors, legatees and heirs' and other claimants against a decedent's estate 'to establish their claims' so long as the federal court does not interfere with the probate proceedings or assume general jurisdiction of the probate or control of the property in the custody of the state court." Markham v. Allen, 326 U.S. 490, 494, 66 S.Ct. 296, 90 L.Ed. 256 (1946).

The standard for determining whether federal jurisdiction may be exercised is whether under state law the dispute would be cognizable only by the probate court. If so, the parties will be relegated to that court; but where the suit merely seeks to enforce a claim *inter partes*, enforceable in a state court of general jurisdiction, federal diversity jurisdiction will be assumed.

Although Connecticut courts do not appear to have passed upon the matter, at least in any recorded decision which we have been able to find, we are

satisfied that plaintiffs' claim for damages and the impressment of a constructive trust upon the assets of Ernest's estate would be treated in Connecticut as one that must be prosecuted in its court of general jurisdiction (the Superior Court) rather than in its probate court.[3] Almost all jurisdictions and authorities which have considered the matter have taken the view that breach of a contract to execute mutual wills does not prevent admission to probate of an otherwise valid subsequent will of a party charged with such a breach.[4] As one commentator aptly put it

> "Where . . . the survivor of co-testators revokes the mutual will and dies, leaving a subsequent will, the parties injured thereby cannot have him specifically compelled to devise as he agreed. No order of court can require the deceased to emerge from his tomb and execute the will and testament. That instrument which is, in point of time, the last will of the decedent, becomes, at least for purposes testamentary, the last will of the testator, to the exclusion of the mutual will." Partridge, The Revocability of Mutual or Reciprocal Wills, 77 U.Pa.L.Rev. 357 at 362 (1929).

Generally, claimants are relegated to an action for breach of contract that must be asserted in a court of general jurisdiction rather than in a probate court, which usually is a court of limited jurisdiction without the power to entertain such suits. See Atkinson, Wills § 48 at 218 (1953).

Such seems to be the case in Connecticut. It is apparent that only Ernest's 1965 will would be (and was) recognized by the Probate Court as his last and only will, validly executed in accordance with Connecticut's requirements and entitled to probate. Plaintiffs' claim for damages and for equitable relief against defendants could only "be brought before a court of general jurisdiction, not the Probate Court. . . .", 2 Locke & Kohn, Connecticut Probate Practice § 519 at 591–92 (1950); Id. § 94 at 175.[5]

■ Turning to the merits, the intent of Mr. and Mrs. Wood to create mutual wills is supported by Ruth's execution of a valid will and Ernest's attempt to execute a reciprocal will bearing the same date, both of which instruments unequivocally expressed their understanding as to mutuality. Further evidence of their understanding is found in their joint execution of an invalid, unwitnessed, undated "Addition to Will executed August 26, 1959" which refers to the "like wills" of that date and purports to make certain additional specific

---

3. Plaintiffs' prayer for a declaratory judgment that Ernest's 1965 will and the probate of it in the Probate Court was void and for an order directing defendants to consent to probate of his purported 1959 will would be dismissible for lack of subject matter jurisdiction. However, these claims have apparently not been pursued (plaintiffs conceding the validity of the 1965 will) and in any event their dismissal would not affect federal jurisdiction over the damage claim.

4. See, e. g., In re Middaugh's Estate, 179 Neb. 25, 136 N.W.2d 217, 219 (1965); Tutunijian v. Vetzigian, 299 N.Y. 315, 319, 87 N.E.2d 275, 276–277 (1949); In re Shepherd's Estate, 130 So. 888, 890–891 (Fla.App.1961); Shawver v. Parks, 239 S.W.2d 188, 189–190 (Tex.Civ.App. 1951); 1 Page, Wills § 10.3 at 441 (Bowe-Parker rev. 1960); Annot., Joint, Mutual and Reciprocal Wills, 169 A.L.R.

9, 24 (1947); Comment, Testamentary Contracts and Irrevocable Wills, 27 Yale L.J. 542, 546–547 (1918).

5. Under Connecticut practice a claim by a "creditor" against a solvent estate must first be presented to the executor within a specified time, as was done here. Conn. Gen.Stats.Ann. § 45–205 (West 1971). Upon the executor's disallowance of the claim, the "creditor" has four months within which to bring suit to establish the validity of his claim. Conn.Gen.Stats. Ann. § 45–210 (West 1960). These statutes have been broadly construed to encompass within their mandates those asserting tort actions against the estate or seeking equitable relief in contract against it, as well as creditors suing upon a debt owed by the decedent. See, e. g., Cook v. Hirschberg, 258 F.2d 56, 59 (2d Cir. 1958).

bequests. But if plaintiffs are to succeed, mere proof of an agreement to execute mutual wills is not enough. The crucial issue is whether, in addition, the Woods agreed that the mutual wills would not be revoked. The execution of mutual reciprocal wills, absent a statement that they are to be irrevocable, may be consistent with an understanding to the effect that each party hopes that the other will adhere to the terms of both wills, at least for a reasonable time, but that changes in circumstances may occur which will render it advisable for the other to execute a new will. As one leading commentator stated:

> "It is generally held that the mere making of mutual separate wills is not sufficient evidence of a contract not to revoke. While their form and content often indicate that each testator knew about the other's will and it may even be inferred that there was concert in making them, we should not infer a contract not to revoke without further proof." Atkinson, Wills § 49 at 225–26 (1953).[6]

We turn therefore to the question of whether plaintiffs have sustained their burden of proving an agreement of irrevocability.

■■ Although Connecticut does not appear to have established any standard of proof as to the issue of irrevocability, both sides here recognize, on the basis of thorough research of authorities briefed by them, that one seeking to establish an agreement not to revoke assumes the burden of proving irrevocability by more than a fair preponderance of the evidence, the higher standard variously being described as "by clear and convincing evidence," Williams v. Rhode Island Hospital Trust Co., 88 R.I. 23, 143 A.2d 324, 332 (1958), by "clear and satisfactory evidence," Father Flanagan's Boys' Home v. Turpin, 252 Iowa 603, 106 N.W.2d 637, 640 (Iowa 1961), by "the most indisputable evidence."

Edson v. Parsons, 155 N.Y. 555, 568, 50 N.E. 265, 268 (1898); McCabe v. Bagby, 186 F.2d 546, 549 (6th Cir. 1951); Rolls v. Allen, 204 Cal. 604, 269 P. 450, 452 (1928); In re Silverman's Estate, 43 Misc.2d 909, 911–912, 252 N.Y.S.2d 587, 590–591 (Surr.Ct.Westchester Co. 1964). The reason for the higher standard lies in the serious and far-reaching consequences of such an agreement, which may have the effect of preventing the surviving spouse from altering his or her estate plan to suit intervening changes in circumstances, such as those arising from remarriage, the death of intended beneficiaries, an increase or decrease in the size of the estate, or similar unforeseen events that may render provisions of the contractual wills inappropriate or unfair, so much so that the deceased spouse, had he or she lived, would have desired or sanctioned appropriate changes in the testamentary provisions. We subscribe to the district court's conclusion here that an agreement not to revoke will be upheld only if established upon the "clearest kind of evidence."

■ Judge Lumbard's finding that plaintiffs here had failed to sustain their burden appears to be amply supported by the record. The alleged agreement not to revoke is based almost entirely upon the Woods' execution of identical wills (one valid and the other ineffective), each stating that it was the testator's understanding that the other spouse would execute a similar, reciprocal will. However, further proof was required to satisfy plaintiffs' burden, particularly when so many more effective methods were available for evidencing such an agreement. Such an objective could have been accomplished, for instance, by the execution of an express written statement of irrevocability, either in a separate instrument, see, e. g. Buehrle v. Buehrle, 291 Ill. 589, 126 N. E. 539 (1920), in a joint will, see, e. g.,

---

6. See also 1 Page, *supra* note 5, § 10.4, at 444–46; Annotation, *supra* note 5, at 23; Partridge, The Revocability of Mutu-al or Reciprocal Wills, 777 U.Pa.L.Rev. 357 at 359 (1929).

Estate of Opal v. C.I.R., 450 F.2d 1085, 1086 (2d Cir. 1971), or in mutual, reciprocal wills, see, *e. g.*, Sample v. Butler University, 211 Ind. 122, 4 N.E.2d 545, 546, 5 N.E.2d 888, 108 A.L.R. 857, 858 (1936). Absent an express written statement of irrevocability, evidence of contemporaneous or subsequent oral statements of the parties, or of additional circumstances, might provide a basis for an inference of an agreement not to revoke. No such extraneous or circumstantial evidence is to be found here. The later undated joint acknowledgment of the existence of "like wills" is hardly sufficient. Indeed, although Ernest's invalid will is identical in language to that of Ruth's (except for required changes in gender), it bore the names of different persons as purported witnesses (each of whom denied signing it) and it was typed on a different machine, all of which creates a strong likelihood that it was not executed at the same time or place as Ruth's will. Viewed as a whole, the evidence was insufficient to establish that in 1959 Ruth and Ernest agreed that their wills would be irrevocable. Accordingly the judgment of the district court is affirmed.