Columbia **CELENTANO**, Plaintiff,

v.

Manuel **FURER**, individually and as Executor of the Estate of Abraham Furer, Defendant.

No. 84 Civ. 7038.

United States District Court, S.D. New York.

Feb. 19, 1985.

Butler, Fitzgerald & Potter, New York City, for plaintiff; James M. Davis, James H. Neale, New York City, of counsel.

Paul, Weiss, Rifkind, Wharton & Garrison, New York City, for defendant; Jay Topkis, Jay Cohen, New York City, of counsel.

EDWARD WEINFELD, District Judge.

Plaintiff commenced this action against the defendant individually and as executor of the estate of his father, decedent Abraham Furer. Jurisdiction is based upon diversity of citizenship.

Plaintiff's action centers about an alleged relationship with the decedent. In essence, plaintiff claims that in 1943 she entered into the employ of a dress manufacturing business owned and operated by the decedent; that thereafter, over a period of forty years until his death, she performed extraordinary services much beyond the requirements of her immediate position; that such services added materially to the success of decedent's business and the accumulation of his personal wealth; that, in addition, she performed many personal services, including nursing care when he was ill; that she was never compensated for any of the extraordinary services; and that from time to time through the years, decedent orally promised that he would by will, (1) leave her certain real property that he owned in Palisades Park, New Jersey, and (2) take care of her and make her a wealthy woman. Plaintiff further alleges that in consideration of such oral promises, she continued to render services and care, and to devote attention to decedent; that for two years prior to decedent's death she resided with him to take care of him more effectively; and that on November 9, 1982, he renewed his previously made oral promises by a written instrument, promising to bequeath to plaintiff the Palisades Park property and one-half of his life savings. Decedent is alleged to have subsequently breached the agreement by failing to make the promised bequests to her and instead bequeathing his entire estate to his son and sole surviving beneficiary, the defendant herein.

Plaintiff seeks judgment against the defendant in both his fiduciary and individual capacities as follows: (1) damages for breach of the November 9, 1982 agree-

ment, to be paid out of decedent's estate in an amount equal to the fair market value at decedent's death of the Palisades Park property and one-half of decedent's life savings, plus interest; (2) alternatively, specific performance and the imposition of a constructive trust over that portion of the estate assets that is the subject of the written agreement; (3) an accounting of all property defendant holds individually, or as executor of the estate, as a fiduciary; and (4) as an alternative to the first three claims, damages for unjust enrichment derived by decedent, and through him by the defendant, at plaintiff's expense.

The defendant, in addition to a general denial of plaintiff's claims, pleads a number of affirmative defenses, including (1) that plaintiff's claims are barred by the statute of frauds, (2) that plaintiff exercised undue influence over decedent; and (3) that the November 9, 1982 document was obtained by duress, coercion or other improper means.

Defendant moves to dismiss the action pursuant to Fed.R.Civ.P. 12(b)(1) for lack of subject matter jurisdiction, or in the alternative, if there is jurisdiction, he urges the Court to abstain from exercising it. In support of his motion, the defendant relies upon what is referred to as the probate exception to the Court's diversity jurisdiction. The defendant argues that under the various claims asserted, plaintiff seeks to reach property now under administration of the Surrogate's Court of New York County where decedent's will was admitted to probate.

It has long been settled that even where diversity jurisdiction exists, a federal court has no jurisdiction to probate a will, administer an estate, or entertain any action that would interfere with probate proceedings pending in a state court or with its control over property in its custody.[1] However, this limitation does not foreclose a federal court from exercising its jurisdiction to adjudicate rights to such property "where the final judgment does not undertake to interfere with the state court's possession save to the extent that the state court is bound by the judgment to recognize the right adjudicated by the federal court."[2]

Our Court of Appeals has stated in *Lamberg v. Callahan:*

The standard for determining whether federal jurisdiction may be exercised is whether under state law the dispute *would be cognizable only by the probate court.* If so, the parties will be relegated to that court; but where the suit merely seeks to enforce a claim *inter partes,* enforceable in a state court of general jurisdiction, federal diversity jurisdiction will be assumed.[3]

Thus, under *Lamberg,* the issue turns on whether under state law the Surrogate's Court of the State of New York has exclusive jurisdiction of plaintiff's claim. Defendant does not dispute that under the Constitution of the State of New York, "the surrogate's court jurisdiction over plaintiff's claims is concurrent with the jurisdiction of the supreme court."[4] Rather, defendant relies upon an alleged policy of deference by the State Supreme Court to the Surrogate's Court with respect to such claims.[5] He argues that because of that policy, "[t]here is no doubt that, if plaintiff filed her complaint in the New York state courts, her claim would be adjudicated by

1. *Markham v. Allen,* 326 U.S. 490, 494, 66 S.Ct. 296, 298, 90 L.Ed. 256 (1946); *accord Lamberg v. Callahan,* 455 F.2d 1213, 1216 (2d Cir.1972); *see Waterman v. Canal-Louisiana Bank & Trust Co.,* 215 U.S. 33, 30 S.Ct. 10, 54 L.Ed. 80 (1909); *see also Princess Lida of Thurn and Taxis v. Thompson,* 305 U.S. 456, 59 S.Ct. 275, 83 L.Ed. 285 (1939).

2. *Markham v. Allen,* 326 U.S. 490, 494, 66 S.Ct. 296, 298, 90 L.Ed. 256 (1946).

3. *Lamberg v. Callahan,* 455 F.2d 1213, 1216 (2d Cir.1972) (emphasis added).

4. Defendant's Brief at 6.

5. *See, e.g., Peekskill Community Hospital .v. Sayres,* 88 A.D.2d 657, 450 N.Y.S.2d 527 (2d Dep't 1982); *Dunham v. Dunham,* 40 A.D.2d 912, 337 N.Y.S.2d 728 (3d Dep't 1972); *Reilly v. Wygant,* 11 A.D.2d 647, 201 N.Y.S.2d 225 (1st Dep't 1960).

the surrogate, not by a court of general jurisdiction," and, therefore, "the dispute would be cognizable *only* by the probate court," within the meaning of our Court of Appeals' decision in *Lamberg*.[6]

 It does not follow that because the State Supreme Court may, or even is likely to, exercise its discretion to defer to the Surrogate's Court, that in *Lamberg*'s terms, "the dispute would be cognizable *only* by the probate court" and not "enforceable in a state court of general jurisdiction."[7] Whatever the reason for such deference, it does not displace the Constitutional provision vesting in the State Supreme Court jurisdiction over probate matters.[8] The Supreme Court of the State of New York has the constitutional power to entertain such claims and it in fact has done so.[9] Moreover, a policy engaged in by judges of deferring to another court possessed of concurrent jurisdiction cannot vitiate the Constitutional grant of jurisdiction to the State Supreme Court.

To adopt defendant's argument that the State Supreme Court's policy of deference is sufficient to satisfy *Lamberg* would require this Court to speculate as to a discretionary decision to be made by an individual State Supreme Court Justice, and would effectively render this Court's determination of its subject matter jurisdiction a function of State policies of judicial economy.[10] As our Court of Appeals has stated of the "probate exception," "the mere internal arrangement of the state courts" even if it results in "effectively exclusive jurisdiction of the 'probate' court is irrelevant to the existence of power to hear the cause."[11]

 This Court has power to entertain plaintiff's claims where their adjudication "does not interfere with the probate proceedings or assume general jurisdiction of the probate or control of the property in the custody of the state court."[12] The adjudication of a claim for recovery under a contract to make a will does not require this Court to probate a will, to interfere with the probate of an otherwise valid will,[13] or even to take control of property in

**6.** Defendant's Brief at 6; *see Lamberg v. Callahan*, 455 F.2d 1213, 1216 (2d Cir.1972) (emphasis added).

**7.** *Id.* (emphasis added).

**8.** N.Y. Const. art. VI, §§ 7, 12; *see also* N.Y. Surr.Ct.Proc.Act § 1810 (McKinney 1967) ("Nothing in this article shall prevent a claimant from commencing an action on his claim at law or in equity").

**9.** *See, e.g., Dombrowski v. Somers*, 41 N.Y.2d 858, 362 N.E.2d 257, 393 N.Y.S.2d 706 (1977) (addressing merits of claim to recover on alleged promise by decedent that plaintiff would be compensated for her services and taken care of for the rest of her life); *Dombrowski v. Somers*, 51 A.D.2d 636, 378 N.Y.S.2d 825 (3d Dep't 1976) (same), *rev'd*, 41 N.Y.2d 858, 362 N.E.2d 257, 393 N.Y.S.2d 706 (1977); *Rubenstein v. Mueller*, 19 N.Y.2d 228, 225 N.E.2d 540, 278 N.Y.S.2d 845 (1967) (action to specifically enforce will originally considered by Supreme Court, Queens County); *Oursler v. Armstrong*, 10 N.Y.2d 385, 179 N.E.2d 489, 223 N.Y.S.2d 477 (1961) (action to impress a trust on portion of second wife's estate, judgment originally rendered by Supreme Court, New York County); *Palm v. Chase Manhattan Bank*, 27 Misc.2d 424, 208 N.Y.S.2d 794 (Sup.Ct.N.Y.Co.1960) (action

to enforce alleged agreement to bequeath); *cf. Reilly v. Wygant*, 11 A.D.2d 647, 201 N.Y.S.2d 225 (1st Dep't 1960) (dismissing claim on contract to bequeath property without prejudice to relief in the Surrogate's Court "in a proceeding in which plaintiff was cited as a party").

**10.** *See Collins v. Manufacturers Hanover Trust Co.*, 124 Misc.2d 907, 478 N.Y.S.2d 236, 238 (Sup.Ct.N.Y.Co.1984) (statute providing for removal from Supreme Court to Surrogate's Court based on fact that Surrogate's Court calendar less subject to delays).

**11.** *Beach v. Rome Trust Co.*, 269 F.2d 367, 373 (2d Cir.1959); *see Waterman v. Canal-Louisiana Bank & Trust Co.*, 215 U.S. 33, 45–46, 30 S.Ct. 10, 13, 54 L.Ed. 80 (1909); *see also Grand Bahama Petroleum Co. v. Asiatic Petroleum Corp.*, 550 F.2d 1320, 1324–25 (2d Cir.1977) (States have no power to enlarge or contract jurisdiction).

**12.** *Markham v. Allen*, 326 U.S. 490, 494, 66 S.Ct. 296, 298, 90 L.Ed. 256 (1946).

**13.** *See Lamberg*, 455 F.2d 1213, 1216; *see also Waterman v. Canal-Louisiana Bank & Trust Co.*, 215 U.S. 33, 46, 30 S.Ct. 10, 13, 54 L.Ed. 80 (1909); *Tutunjian v. Vetzigian*, 299 N.Y. 315, 320–21, 87 N.E.2d 275 (1949).

the custody of the Surrogate's Court and subject to its *in rem* jurisdiction.[14]

It may be that this Court does not have the power to grant plaintiff all of the relief sought in her complaint. However, clearly with respect to the plaintiff's claims (1) for damages for breach of the November 9, 1982 agreement, (2) alternatively for specific performance of the agreement, and (3) for unjust enrichment, they are claims against defendant individually and do not implicate or trench upon the Surrogate's power over the estate or the disposition of any property under its control by reason thereof. It may be argued that the claim for an accounting of all property held by defendant as an executor of the estate parallels that which the Surrogate may be called upon to determine. However, this claim for relief may be interpreted as applying "only [ ] to property that has been distributed to [defendant] as a legatee and is therefore no longer subject to the jurisdiction of the probate court."[15] The Court has power to grant such relief and the state court would be bound to recognize the rights so adjudicated.[16]

To the extent that, under her third claim, plaintiff also seeks an accounting of the estate's assets which defendant holds as executor, that does not deprive this Court of jurisdiction to entertain the basic underlying contract claims. As our Court of Appeals has recently found, it is unnecessary to determine "at this stage of the litigation the full extent of the relief the district court is empowered to grant."[17] It

is sufficient that subject matter jurisdiction exists as to the underlying claim and some of the relief requested. The Court, in its discretion, may fashion appropriate relief, and in doing so, may avoid the need to decide whether it has jurisdiction to grant certain types of relief.[18]

Accordingly, defendant's motion to dismiss plaintiff's complaint for lack of subject matter jurisdiction is denied.

Defendant argues, in the alternative, that the Court should exercise its discretion to abstain from taking jurisdiction since the claim is on the "verge" of the probate exception.[19] There is no claim here that the case falls within the three traditional categories repeatedly emphasized by the Supreme Court as a prerequisite to abstention: (1) avoiding a federal constitutional issue by seeking a state determination of state law; (2) declining to restrain state criminal proceedings, collection of taxes, and other similar acts; or (3) deferring to state resolution of difficult state law questions that involve important public policy considerations or where federal review would be disruptive of state regulation or administration.[20] It is evident that the first two categories are inapplicable here; so, too, the third, for plaintiff's contract claims and defendant's defenses comprise "a garden variety" diversity case, involving neither the construction of a new or nonexisting statute, nor presenting "[c]omplex and unsettled issues of state law, whose

---

**14.** See *Citibank, N.A. v. Data Lease Financial Corp.,* 645 F.2d 333, 338–39 (5th Cir.1981) (decree of specific performance of contract to convey real property does not interfere with another court's *in rem* jurisdiction).

**15.** *Giardina v. Fontana,* 733 F.2d 1047, 1051 (2d Cir.1984).

**16.** See *Markham v. Allen,* 326 U.S. 490, 494, 66 S.Ct. 296, 298, 90 L.Ed. 256 (1946).

**17.** *Giardina v. Fontana,* 733 F.2d 1047, 1051 (2d Cir.1984).

**18.** *Id.*

**19.** See, e.g., *Phillips, Nizer, Benjamin, Krim & Ballon v. Rosenstiel,* 490 F.2d 509, 516 (2d Cir.

1973); cf. *Giardina v. Fontana,* 733 F.2d 1047, 1051 (2d Cir.1984) (acknowledging the appeal of abstention in probate matters where the state has an interest and competence not shared by federal judges, but recognizing that Supreme Court decisions since *Phillips, Nizer, supra* have restrictively interpreted the conditions under which abstention is appropriate).

**20.** See *Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 814–16, 96 S.Ct. 1236, 1244–45, 47 L.Ed.2d 483 (1976); *Giardina v. Fontana,* 733 F.2d 1047, 1052 n. 1 (2d Cir.1984).

resolution might well affect broad policies of the state."[21]

■ Outside of these three categories, the courts have "the virtually unflagging obligation ... to exercise the jurisdiction given them."[22] However, the Supreme Court has identified, in addition to the three established categories of abstention, one further instance where dismissal may be appropriate: a district court may decline to exercise its jurisdiction in favor of concurrent state proceedings in "exceptional circumstances."[23] The Supreme Court in *Colorado River Water Conservation District v. United States,*[24] and in *Moses H. Cone Memorial Hospital v. Mercury Construction Corporation,*[25] enumerated five factors to be considered in determining whether such "exceptional circumstances" exist: (1) assumption by either court of jurisdiction over a *res* or property; (2) convenience to the parties of one forum over the other; (3) avoidance of piecemeal litigation; (4) the order in which jurisdiction was obtained by the concurrent forums; and (5) whether federal or state law provides the rule of decision on the merits.[26] Based on his analysis of the factors, defendant argues that the balance favors abstention.

■ The Court is not confronted here with the type of exceptional circumstances contemplated by the Supreme Court when it developed this exception to the general rule that "the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction."[27] Dismissal under *Colorado River* requires "the clearest of justifications"; that is, an unequivocal showing that dismissal would conserve substantial judicial resources and result in the comprehensive disposition of litigation.[28] However, here, there is little potential for duplicative litigation. Plaintiff's claims are not now, nor have they ever been, before the Surrogate. Plaintiff was not a party to the special proceeding to admit the will to probate, and not being a "distributee" or other statutorily enumerated party, was not even entitled to notice of the proceeding.[29] For plaintiff to institute a claim at this point would require her to petition for a new and separate proceeding.[30] Moreover, defendant does not contend that there are other contested claims presently under consideration by the Surrogate. If plaintiff does obtain a judgment in this Court, she may be required to return to the Surrogate to enforce it, but such a proceeding would not require a reconsideration of the merits of her claim. Finally, even assuming that complete adjudication of all claims against the estate might be had before the Surrogate were the Court to dismiss, the incremental increase in the comprehensive-

21. *Quinn v. Aetna Life & Casualty Co.,* 616 F.2d 38, 41 (2d Cir.1980) (per curiam).

22. *Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 817, 96 S.Ct. 1236, 1246, 47 L.Ed.2d 483 (1976).

23. *Id.* at 817–18, 96 S.Ct. at 1246; *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.,* 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983); *accord Giardina v. Fontana,* 733 F.2d 1047, 1052 (2d Cir.1984).

24. 424 U.S. 800, 96 S.Ct. 1234, 47 L.Ed.2d 483 (1976).

25. 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983).

26. *Id.,* 460 U.S. at 15, 23, 103 S.Ct. at 936, 941; Colorado River, 424 U.S. at 818–19, 96 S.Ct. at 1246–47.

27. *Colorado River,* 424 U.S. at 817, 96 S.Ct. at 1246 (quoting *McClellan v. Carland,* 217 U.S. 268, 282, 30 S.Ct. 501, 505, 54 L.Ed. 762 (1910)).

28. *Id.,* 424 U.S. at 817, 819, 96 S.Ct. at 1246, 1247.

29. N.Y.Surr.Ct.Proc.Act § 1403 (McKinney 1967 & Supp.1984–85); *see* 41 N.Y.Jur.2d § 1852 (1984) ("one who is not entitled to share in the estate as a distributee is neither a necessary nor a proper party" to a proceeding to probate a will).

30. *See* N.Y.Surr.Ct.Proc.Act §§ 203, 302–06 (McKinney 1967 & Supp.1984–85); 40 N.Y. Jur.2d §§ 1303–05 (1984); 42 N.Y.Jur.2d § 2244 (1984); *see also* N.Y.Surr.Ct.Proc.Act § 1810 (McKinney 1967); 42 N.Y.Jur.2d § 2133 (1984) ("A creditor of a decedent's estate may, without presenting his claim to the fiduciary or taking any action whatsoever in the Surrogate's Court, bring an action in another court upon his claim").

ness of litigation achieved by remitting plaintiff to the Surrogate can in no way compare to that achieved in *Colorado River* where some 1000 water users' conflicting claims for water rights were at issue. In such circumstances, the Court cannot find the clearest of justifications for dismissal.

Accordingly, defendant's motion to dismiss is denied in its entirety.

So ordered.