Dianne McGOVERN et al., Plaintiffs,

v.

Maureen SOLOMON, Defendant.

No. 06 Civ. 3444(JSR).

United States District Court,
S.D. New York.

Dec. 26, 2006.

Joseph Gerard McKay, Greenwald Law Offices, Chester, NY, David Lazer, Lazer, Aptheker, Rosella & Yedid, P.C., Melville, NY, for Plaintiffs.

Arthur J. Jacobs, John Frank Burleigh, Jacobs Debrauwere LLP, New York City, for Defendant.

### MEMORANDUM

RAKOFF, District Judge.

By Order dated September 8, 2006 ("the September 8 Order"), this Court denied a motion by co-plaintiff Bonnie Solomon to dismiss the third counterclaim in defendant Maureen Solomon's Second Amended Answer (the "Answer"). By Order dated December 8, 2006 ("the December 8 Order"), however, this Court granted plaintiff Bonnie Solomon's motion for partial summary judgment dismissing that same third counterclaim. This Memorandum will briefly state the reasons for these two orders.

*The September 8 Order:*

Since Bonnie Solomon's first motion was addressed to the pleadings in the third counterclaim, the allegations pertinent to the September 8 Order are those alleged in the Answer and, where uncontested, the allegations in plaintiffs' Verified Complaint (the "Complaint"). The relevant allegations are the following: Kristina Dreska died intestate in 1981, survived by six children, one of whom was Kristina's daughter Anne Solomon. Complaint ¶¶ 9–11. Anne Solomon subsequently died, but was survived by two daughters, one of whom, Bonnie Solomon, is one of the plaintiffs here, while the other daughter, Maureen Solomon, is the sole defendant here. The principal asset of Kristina's estate was a single-family residence in Flushing, New York ("the Flushing Property"), which has since been sold. *Id.* ¶ 9. Kristina's estate was never probated and the bulk of the allegations in the Complaint concern an ongoing disagreement over how to distribute the proceeds from the subsequent sale of the Flushing Property. *See id.* ¶ 26. All of the parties in this case claim to be entitled to a share of the sale proceeds.

Maureen Solomon's third counterclaim, which is brought against Bonnie Solomon only, does not concern, however, the Flushing Property but rather relates to a separate series of events alleged to have taken place in 1999 (collectively, the "Solomon Group Transfers"), in which Anne Solomon (the mother) conveyed to Bonnie (one of her daughters) substantially all of her interest in a New York general partnership holding various real estate assets. *See* Answer ¶¶ 157–159. Maureen Solomon (the other daughter) alleges that Anne Solomon, who suffered from schizo-

phrenia, was not competent to make the transfers. *Id.* ¶ 163. She further contends that the Solomon Group Transfers "were and are void" and that all assets derived therefrom rightfully belong to "the intestate heirs" of Anne Solomon's estate. *Id.* ¶¶ 163–164. Accordingly, in her third counterclaim, Maureen Solomon seeks a "judgment imposing an equitable trust in favor of [Maureen Solomon] and against [Bonnie Solomon] of an amount equal to 50% of the Solomon Group Transfers, and directing [Bonnie Solomon] to pay such ... amount to [Maureen Solomon] together with all appropriate interest." Answer ¶ 167.

█ It has been said that "[a] constructive trust is the formula through which the conscience of equity finds expression." *Simonds v. Simonds,* 45 N.Y.2d 233, 241, 408 N.Y.S.2d 359, 380 N.E.2d 189, 193 (1978) (quoting *Beatty v. Guggenheim Exploration Co.,* 225 N.Y. 380, 386, 122 N.E. 378, 380 (1919) (Cardozo, J.)). To be entitled to a constructive trust, a party must establish "(1) a confidential or fiduciary relationship; (2) a promise, express or implied; (3) a transfer made in reliance on that promise; and (4) unjust enrichment." *Brand v. Brand,* 811 F.2d 74, 77 (2d Cir.1987). That the third counterclaim does not in so many words allege an express promise is not fatal to the claim because "an express promise is not required" in circumstances where "a promise may be implied or inferred from the very transaction itself." *Id.* at 78 (citing cases).

█ Bonnie Solomon's motion to dismiss is predicated on three grounds. First, she argued that the third counterclaim was defective because Maureen Solomon's allegation "that Anne suffered from a mental illness, without more, do[es] not set forth grounds for an adjudication of mental incompetency." Plaintiff's Memorandum of Law ("Pltf.Mem.") at 11. To the extent

that Bonnie Solomon is asserting that schizophrenia *by itself* is not grounds to set aside an *inter vivos* transfer, her assertion is true, but irrelevant. The very case on which Bonnie Solomon relies for this argument, *Winters v. Miller,* 446 F.2d 65 (2d Cir.1971), makes clear that "prior actions of persons adjudged mentally incompetent may subsequently be found voidable once incompetency is judicially established." *Id.* at 68 n. 3.

In the alternative, Bonnie Solomon's motion to dismiss pressed two other closely related arguments. First, she argued that the third counterclaim should be dismissed pursuant to Fed.R.Civ.P. 12(b)(6) on the ground that under New York law (which here governs), assets transferred improperly during a decedent's lifetime can only be recovered as part of a state probate proceeding. Second, she argued that the third counterclaim should be dismissed pursuant to Fed.R.Civ.P. 12(b)(1) on the ground that Maureen Solomon, who had never been adjudicated an executrix of Anne Solomon's estate, lacked standing to commence a lawsuit to recover assets on behalf of what would in effect be Anne Solomon's estate.

█ Both of these arguments run contrary to the law of New York. In *Brand,* the Second Circuit, interpreting New York law, affirmed a district court ruling that had (i) imposed a constructive trust on various assets transferred *inter vivos* by a decedent to defendant, (ii) directed the defendant to render an accounting with respect to his handling of those assets following the decedent's death, and (iii) directed both plaintiff and defendant, who were siblings, to proceed to probate in the appropriate New York Surrogate's Court. *See Brand,* 811 F.2d at 77–78. In so doing, the *Brand* court necessarily found that the plaintiff had standing to bring such a claim. As subsequent courts have

explained, it is "implicit that the equitable doctrine of the constructive trust . . . conveys standing" upon those who would otherwise have inherited from the decedent. *See Gimbel v. Feldman,* 1995 WL 500487, *4, 1995 U.S. Dist. LEXIS 21429, *11 (S.D.N.Y.1995)(citing *Tesauro v. Tesauro,* 112 N.Y.S.2d 246 (N.Y.Sup.1952)). *See also Quinlan v. Empire Trust Co.,* 139 F.Supp. 168 (S.D.N.Y.1956); *Paskowski v. Paskowski,* 361 F.Supp. 981 (E.D.N.Y. 1973).

■ Moreover, while Bonnie Solomon's broader suggestion appears to be that Maureen Solomon has, in effect, made an end-run around state probate proceedings, her arguments here wrongly presuppose that federal courts lack jurisdiction to hear actions that might otherwise have been brought in the Surrogate's Courts. But the so-called "probate exception" to federal jurisdiction is much narrower than that. Indeed, as the Second Circuit recently noted, in most instances, "the [New York] Surrogate's Courts share concurrent subject matter jurisdiction with the state's court of general jurisdiction, the Supreme Court. There thus exists no probate jurisdiction belonging exclusively to the Surrogate's Court for the District Court improperly to usurp." *Moser v. Pollin,* 294 F.3d 335, 341 (2d Cir.2002) (internal citations omitted). In this case, the estate of Anne Solomon has never been probated, rendering inapposite the stricture that federal courts not "interfere with . . . probate proceedings *concurrently* pending before a state court." *Moser v. Pollin,* 294 F.3d 335, 342 (2d Cir.2002) (emphasis added) (internal quotation marks omitted).

More generally, while it has been said that the probate exception is " 'one of the most mysterious and esoteric branches of the law of federal jurisdiction,' " *Ashton v. Josephine Bay Paul & C. Michael Paul Found., Inc.,* 918 F.2d 1065, 1071 (2d Cir.1990)(quoting *Dragan v. Miller,* 679 F.2d 712, 713 (7th Cir.1982)(Posner, J.)), the Supreme Court, in the recent case of *Marshall v. Marshall,* — U.S. —, 126 S.Ct. 1735, 164 L.Ed.2d 480 (2006), emphasized the narrowness of the probate exception and its limited application in cases other than those involving a direct challenge to the probate of a will or trust. Here, as mentioned, Anne Solomon's estate has never been probated, and the underlying cause of action was originally brought in New York Supreme Court, not the New York Surrogate's Court. Consequently, this case does not run afoul of the more limited probate exception set out in *Marshall.*[1]

*The December 8 Order:*

Although the December 8 Order involved a motion for partial summary judg-

---

1. Bonnie Solomon's motion would have failed even prior to *Marshall,* for at that time, the Second Circuit's "standard for determining whether federal jurisdiction may be exercised [was] whether under state law the dispute would be cognizable *only* by the probate court." *Lamberg v. Callahan,* 455 F.2d 1213, 1216 (2d Cir.1972)(emphasis added). Under this test, if the dispute could only have been brought in a state probate court, "the parties [would] be relegated to that court; but where the suit merely seeks to enforce a claim *inter partes,* enforceable in a state court of general jurisdiction, federal diversity jurisdiction will be assumed." *Id.* There can be no serious dispute that the third counterclaim, which seeks only a constructive trust, could have been brought in a state court of general jurisdiction. Even if one accepts Bonnie Solomon's premise that, as a matter of common practice, this case would most likely have been transferred to the Surrogate's Court, a "policy engaged in by judges of deferring to another court possessed of concurrent jurisdiction cannot vitiate the Constitutional grant of jurisdiction to the State Supreme Court." *Celentano v. Furer,* 602 F.Supp. 777, 780 (S.D.N.Y.1985) (internal footnotes and citations omitted).

ment, the undisputed facts relevant to that motion were, in most respects, consistent with the allegations stated above. The Solomon Group is a New York general partnership. Plaintiffs' Statement pursuant to Local Rule 56.1 ("Pltf.56.1") at ¶ 1; Defendant's Statement Pursuant to Local Rule 56.1 ("Def.56.1") at ¶ 1. As of November 9, 1995, when defendant Maureen Solomon resigned as a partner, the two remaining partners in the group were Anne Solomon and her daughter Bonnie Solomon. Pltf. 56.1 ¶ 2; Def. 56.1 ¶ 2. In 1999, Anne Solomon conveyed all but 1% of her interest in the Solomon Group to Bonnie Solomon in a series of transactions dated January 15, 1999, August 2, 1999, and September 1, 1999 (collectively, the "Solomon Group Transfers"). Pltf. 56.1 ¶¶ 3–5; Def. 56.1 ¶¶ 3–5. On May 31, 2001, Anne Solomon, who had by then been diagnosed with schizophrenia, executed a document that purports to be a durable power of attorney, giving Maureen Solomon the power to prosecute claims on her behalf. Pltf. 56.1 ¶ 5–7; Def. 56.1 ¶ 5–7. On April 3, 2002, Maureen Solomon lodged a complaint with the Nassau County District Attorney's Office alleging that certain assets of Anne Solomon were wrongly in the possession of Bonnie Solomon; however the District Attorney's office did not take any legal action as a result of this complaint. Pltf. 56.1 ¶¶ 11–12; Def. 56.1 ¶¶ 11–12. On April 18, 2002, Anne Solomon died, survived by two daughters (but no spouse); however, her estate was never probated. Pltf. 56.1 ¶¶ 12–15; Def. 56.1 ¶¶ 12–15.

Certain other relevant facts that are in genuine dispute and that must therefore be taken most favorably to Maureen Solomon (the respondent on this motion) are the following: It was not until July, 2006 that Maureen Solomon learned, as a result of documents uncovered in this litigation, that "in 1999 ... suffering from the effects of 'long-term schizophrena.' [Anne Solo-

mon] signed a series of documents whereby she transferred her entire interest in her real estate properties and the remainder of her assets to Bonnie Solomon." Def. 56.1 Stmnt. ¶¶ 24–25 (citing Declaration of Maureen Solomon in Opposition to Motion to Dismiss ("Maureen Decl.") ¶¶ 2–3). It was this new information that led Maureen Solomon, on August 2, 2006, to add the third counterclaim seeking to "declare the Solomon Group Transfers void" and to impose a constructive trust on the assets transferred therein. *Id.* ¶ 26 (citing Maureen Decl. ¶ 4).

■ Based on the foregoing, plaintiff Bonnie Solomon moves for partial summary judgment on the ground that the third counterclaim is time-barred. The parties do not dispute that under New York law, "[a]n action for constructive trust is an equitable action governed by the six-year Statute of Limitations in CLPR 213(1)." Defendant's Memorandum of Law in Response to Plaintiff's Motion for Partial Summary Judgment ("Def.Mem.") at 1. But they disagree as to when that limitations period began to run on Maureen's third counterclaim.

■ Under New York law, an action for a constructive trust begins to accrue, and the limitations period begins to run, as of "the date when the acts occurred on which the claim of constructive trust is predicated," *Scheuer v. Scheuer,* 308 N.Y. 447, 450, 126 N.E.2d 555, 558 (1955). The "acts" relevant are the "wrongful acts" giving rise to the action. *See Boronow v. Boronow,* 71 N.Y.2d 284, 288, 525 N.Y.S.2d 179, 519 N.E.2d 1375, 1377 (1988) (stating that an action for constructive trust is governed by "the six-year Statute of Limitations ... which begins to run in a constructive trust case upon the occurrence of the wrongful act"); *Kaufman v. Cohen,* 307 A.D.2d 113, 127, 760 N.Y.S.2d 157, 171 (N.Y.App. Div.

1st Dep't 2003) ("An action to impose a constructive trust is governed by the six-year statute of limitations ... which commences to run upon occurrence of the wrongful act giving rise to a duty of restitution, and not from the time when the facts constituting the fraud are discovered."). Accordingly, Bonnie Solomon argues that the action was wholly time-barred by no later than September 1, 2005, the date that is 6 years from the last of the (allegedly wrongful) Solomon Group Transfers.

In response, Maureen contends that the cause of action did not accrue *as to her* until, at the earliest, August 18, 2002, the date of Anne Solomon's death, because prior to that date, she could not have brought this claim. In particular, Maureen Solomon relies on language from *Augustine v. Szwed*, 77 A.D.2d 298, 300, 432 N.Y.S.2d 962, 965 (N.Y.App. Div. 4th Dep't 1980), stating that an action for a constructive trust only "accrues when the property in dispute is held adversely to the beneficiary's rights." But this language is inapposite to the present motion. In *Augustine,* a case brought by the rightful beneficiary of an insurance policy, the court reasoned that because a property right in life insurance proceeds remains inchoate until the death of the insured, a husband who had promised to name his wife as beneficiary of his policy could not have "withheld" the resulting proceeds until such "inchoate rights ... vest," *i.e.* until after the death of the insured. *See* 77 A.D.2d at 301, 432 N.Y.S.2d at 965. But here, by contrast, the Solomon Group Transfers involved a set of interests that were in no way inchoate.

▪ Additionally, Maureen Solomon seeks to derive support for her argument from selective quotations taken from cases applying the well-established rule that if an originally valid transfer only later be-

comes wrongful (e.g. because of a broken promise to re-convey) then it is at such time, and not before, that the statute of limitations begins to accrue. *See, e.g., Pate v. Pate,* 17 A.D.3d 334, 334, 791 N.Y.S.2d 849, 849 (N.Y.App. Div.2d Dep't 2005) (stating an action to impose a "constructive trust is governed by the six-year statute of limitations of CPLR 213(1), which started to run from the date the defendants allegedly repudiated the agreement to transfer the subject property"); *Matter of Sroczyk,* 96 A.D.2d 749, 465 N.Y.S.2d 323 (N.Y.App. Div. 4th Dep't 1983) (same). Such cases are here irrelevant, however, because Maureen Solomon's own allegations make clear if the transfers were wrongful at all, they were wrongful beginning at the time of conveyance. Thus, the gravamen of her claim is that:

> [A]s a result of Anne Solomon's lack of competence to make gifts or to convey by contract or otherwise divest herself of her substantial assets, the Solomon Group Transfers, secured and obtained by Counterclaim–Defendant Bonnie Solomon, *were and are void.*

Answer ¶ 163 (emphasis added). Where, as here, the contention is that an original transfer is wrongful, it has been held that even a "later refusal to convey ... did not serve to extend or otherwise toll the period of limitations since the defendant's interest in the property was held adversely to the plaintiffs' interest from the date of acquisition of the property." *Dybowski v. Dybowska,* 146 A.D.2d 604, 605, 536 N.Y.S.2d 838, 839 (N.Y.App. Div.2d Dep't 1989).

▪ In any event, Maureen Solomon's argument suffers from a more fundamental problem. Specifically, Maureen Solomon contends that her third counterclaim accrued as to her on the date of Anne Solomon's death, regardless of when the underlying events occurred and irrespective of whether or not Anne Solomon could

have brought the same action prior to her death. To allow Maureen Solomon what would in effect be a second, renewed statute of limitations period for a wrong that was in the first instance perpetrated against Anne Solomon would fly in the face of the statutory scheme for claims brought on behalf of a decedent, which permits an executor, at most, a one-year extension from the date of death to bring an otherwise time-barred claim and which limits the toll for incompetence to "no later than three years after the disability ceases or the person under the disability dies." *See* New York C.P.L.R. §§ 208, 210(a).

Tellingly, even were Maureen Solomon somehow given the benefit of either of the above tolls, her claims with respect to the Solomon Group Transfers would still be wholly time-barred. Yet under the theory she advances, any (alleged) beneficiary of an estate would have six years from the date of death to recover property taken from the decedent. This would defeat entirely the whole purpose of a statute of limitations. Accordingly, it is plain that, in the instant case, the statute of limitations for actions for constructive trust began to run as of the latest of the Solomon Group Transfers, and that, as a consequence, any action relating to the Solomon Group Transfers was wholly time-barred no later than September 1, 2005. As a result, the third counterclaim must dismissed with prejudice, as it was by the December 8 Order.