**Florence Campbell DANNHARDT, Plaintiff,**

v.

**Paul J. DONNELLY, Jr., Executor of the Estate of Edith M. Campbell, Defendant.**

**No. 84 Civ. 1394.**

United States District Court, E.D. New York.

March 20, 1985.

Jay D. Lukowski, Robinson, Perlman & Kirschner, P.C., New York City, for plaintiff.

Thomas G. Sherwood, Albanese, Albanese & Fiore, Garden City, N.Y., for defendant.

## MEMORANDUM AND ORDER

GLASSER, District Judge:

This is one of the unusual cases in which the court's attention is directed to consideration of the probate exception to federal diversity jurisdiction, i.e., to the power of the federal courts to adjudicate disputes involving wills and estates. In this action, plaintiff Florence Campbell Dannhardt seeks to compel the specific performance of a joint will entered into between her brother and sister-in-law, Harry and Edith Campbell, and executed by them on December 21, 1963. Defendant Paul J. Donnelly, Jr., the executor of a subsequent will executed by Edith Campbell, has moved to dismiss the complaint for lack of subject matter

jurisdiction, or alternatively, for this Court to abstain from adjudicating this dispute. Plaintiff has also moved for summary judgment. For the reasons that follow, defendant's motion is granted in part and denied in part. Insofar as plaintiff's remaining claim requests a declaration compelling defendant to specifically perform the joint will, plaintiff's motion for summary judgment on that claim is granted.

*Facts*

The facts underlying this action are not in dispute. On December 21, 1963, Henry and Edith Campbell executed the joint will which plaintiff seeks to enforce here. The relevant portions of the joint will, which are set out in the margin,[1] designate plaintiff as the Campbells' sole distributee and as the executrix of their estate.

Henry Campbell predeceased Edith when he died on November 3, 1970, prior to which time the joint will had not been revoked. The joint will was duly admitted to probate, and Edith Campbell thereby received the entire estate of Henry Campbell. On August 27, 1982, Edith Campbell executed a new will ("the second will"), devising her estate to more than thirty individuals and leaving only $3,000 to plaintiff. In addition, the second will named defendant and his brother as the executors of Edith Campbell's estate. Defendant's brother subsequently renounced his interest therein.

Edith Campbell died on January 23, 1983, and subsequently defendant filed the second will, which was later admitted to probate. Plaintiff filed objections to the second will, urging that the joint will was the Campbells' only valid will. Defendant moved in the Surrogate's Court to dismiss plaintiff's objections to the second will, contending that plaintiff's proper remedy was not in Surrogate's Court, but should be an action for specific performance of the joint

1. The provisions of the joint will relevant to this dispute read as follows:

> SECOND: Upon the death of one of us, leaving the other surviving, all the property and estate of every kind and nature and wheresoever situate, of the one so dying first or of which he or she has power of disposal, is hereby given, devised and bequeathed *to the survivor absolutely and without any limitation or restriction whatever.*
>
> THIRD: In the event we both die at the same time, all our estate and property, and all property of which we or either of us have power of disposal, is hereby given, devised and bequeathed to FLORENCE DANNHARDT, sister of HARRY B. CAMPBELL, Jr.; and in the event that one of us survives the other, then upon the death of the survivor of us, all the estate and property owned by such survivor, or of which he or she has power of disposal, irrespective of who owned the same in the beginning, is given, devised and bequeathed to FLORENCE DANNHARDT. All the rest, residue and remainder of our estate and property, and all property of which we or either of us have power of disposal, on the death of both of us is hereby given, devised and bequeathed to FLORENCE DANNHARDT.
>
> FOURTH: Upon the death of one of us, leaving the other surviving, the survivor of us is hereby appointed Executor of this as the LAST WILL AND TESTAMENT of the one so dying first and it is directed that he or she shall not be required to give any bond or

> undertaking, any law to the contrary notwithstanding, and we hereby release and discharge our Executor from any obligation imposed by the law in the administration of our estate, and upon the death of both of us we direct that FLORENCE DANNHARDT, of 1814 Hannington Avenue, Wantagh, New York, is hereby appointed Executrix of us and each of us and of our joint and respective wills as herein expressed, and we direct that she shall not be required to give any bond or undertaking, any law to the contrary of any State notwithstanding, and we hereby release and discharge our Executrix from any obligation imposed by the law in the administration of our estate.

(Emphasis added).

The third to last and penultimate paragraphs of the joint will further state:

> If my wife, EDITH MAY CAMPBELL, and I die *simultaneously* or under such circumstances that it cannot be determined which of us was the survivor, it shall be presumed for the purposes of this will that my said wife survived me.
>
> We have agreed upon the foregoing disposition of our property, and in consideration thereof, it is further agreed that this will shall be forever binding upon us and each of us, and shall bind our distributees and representatives and that this will *shall not be revoked by us or by the survivor of us with the exception only that it may be revoked in writing duly subscribed by us and executed with the formality of a will.*

(emphasis added).

will in a court of general jurisdiction.[2]  Surrogate Laurino granted defendant's motion on February 24, 1984.[3]  On March 14, 1984, the second will was admitted to probate. Plaintiff subsequently filed a claim against Edith Campbell's estate in the Surrogate's Court.[4]

It is plaintiff's position in this litigation that, pursuant to the second and penultimate paragraph of the joint will, *supra* note 1, that the joint will became irrevocable upon the death of Harry Campbell. Defendant Donnelly, who drafted both the joint will and the second will, disputes this argument, and contends that the language in the second paragraph of the joint will "to the survivor absolutely and without any limitation or restriction whatever" created an absolute unconditional gift of the first decedent's estate to the surviving testator, thus permitting Edith Campbell to execute a later, enforceable will.  In addition, defendant alleges that the phrase "on the death of both of us" in the last clause of paragraph three of the joint will was intended to apply only if Harry and Edith Campbell died simultaneously or died too close in time for the survivor to execute a new will.  Thus, defendant, who allegedly knew the testator for some ten years prior to drafting the joint will,[5] alleges that it was always the testators' intention that the survivor of Harry and Edith Campbell be permitted to execute a new will and that relatives on both sides of the family receive benefits thereby.  Defendant further alleges that plaintiff was intended to be the sole beneficiary of the joint will only in the event of the limited circumstances described above.

In her motion for summary judgment, plaintiff seeks an order (1) declaring that she is entitled to receive the entire estate of Edith Campbell pursuant to the provisions of the joint will; (2) directing defendant to pay over the entire estate to plaintiff; and (3) directing defendant to pay to plaintiff all commissions, executor's fees or other compensation which he or anyone acting under his control may receive for acting as executor of the second will.  In opposition, defendant urges that the issue of testators' intent is a question of fact, the existence of which should preclude a grant of summary judgment in plaintiff's favor. Plaintiff argues that parol evidence regarding such alleged intent should be excluded because the language of the joint will is unambiguous.

In addition, defendant challenges the subject matter jurisdiction of this Court, contending that jurisdiction lies within the Surrogate's Court.  In the alternative, defendant requests that this Court abstain from exercising jurisdiction over any or all of plaintiff's claim.  Because the existence of subject matter jurisdiction is a prerequisite to the examination of the merits of plaintiff's claim, I will address the issues presented in defendant's motion prior to addressing those raised by plaintiff.

*Subject Matter Jurisdiction*

■ Without detailing the historical origins of the probate exception to federal jurisdiction,[6] it is sufficient to state that the adjudication of "purely" probate matters is outside the subject matter jurisdiction of the federal courts.  *Waterman v. Canal-Louisiana Bank & Trust Co.,* 215 U.S. 33, 44, 30 S.Ct. 10, 12, 54 L.Ed. 80 (1909).  However,

---

**2.**  *See* Affidavit of Florence Campbell Dannhardt in Support of Motion for Summary Judgment ("Dannhardt Aff."), Exhs. F, G, H.

**3.**  Because a copy of the Surrogate's decision and order are not in the record, it is impossible to determine the basis upon which the Surrogate granted defendant's motion to dismiss plaintiff's objection to the second will.

**4.**  *See* Affirmation of Thomas G. Sherwood in support of defendant's motion for judgment on the pleadings ("Sherwood Aff."), Exh. 3.

**5.**  Defendant also alleges that he drafted three wills for Edith Campbell during the period between Harry Campbell's death and the execution of the second will.

**6.**  For an overview of the origin of this concept, *see, e.g., Dragan v. Miller,* 679 F.2d 712, 713–14 (7th Cir.); *cert. denied,* 459 U.S. 1017, 103 S.Ct. 378, 74 L.Ed.2d 511 (1982).

[f]ederal courts of equity have jurisdiction to entertain suits "in favor of creditors, legatees and heirs" and other claimants against a decedent's estate "to establish their claims" *so long as the federal court does not interfere with the probate proceedings or assume general jurisdiction of the probate or control of the property in the custody of the state court.*

*Markham v. Allen,* 326 U.S. 490, 494, 66 S.Ct. 296, 298, 90 L.Ed. 256 (1946) (emphasis added) (citations omitted). *See also* 13B C. Wright, A. Miller & E. Cooper, *Federal Practice & Procedure,* § 3610 at 484, 487 (1984) ("Wright, Miller & Cooper").

■ As stated by the Second Circuit:

The standard for determining whether federal jurisdiction may be exercised is whether under state law the dispute would be cognizable only by the probate court. If so, the parties will be relegated to that court; but where the suit merely seeks to enforce a claim *inter partes,* enforceable in a state court of general jurisdiction, federal diversity jurisdiction will be assumed.

*Lamberg v. Callahan,* 455 F.2d 1213 (2d Cir.1972). *See also Waterman v. Canal-Louisiana Bank & Trust Co., supra,* 215 U.S. at 45–46, 30 S.Ct. at 13. Furthermore, "[i]t generally is not considered an interference with state proceedings for a federal court to declare whether a party has the right to share in an estate. Indeed, doing so has been held specifically within the equity jurisdiction of the federal courts." Wright, Miller & Cooper, *supra,* § 3610 at 493 (citation omitted).

■ Two of the aspects of the relief sought by the plaintiff here, namely, the direction by this Court that defendant pay over to plaintiff the entire estate of Edith Campbell and any executor's fees collected in connection with that estate, are obviously matters which fall exclusively within the probate jurisdiction of the Surrogate's Court and over which this Court lacks subject matter jurisdiction. *See* N.Y. Surrogate's Court Procedure Act ("SCPA") § 2201 (regarding accounting proceeding) and § 2110 (Surrogate's Court has sole responsibility of determining attorney's fees in connection with estate administration); *In re Israel's Estate,* 64 Misc.2d 1035, 315 N.Y.S.2d 453, 462 (1970) (accounting proceeding or independent proceeding in Surrogate's Court are appropriate methods under New York law to deprive fiduciary of statutory fees). *See also Giardina v. Fontana,* 733 F.2d 1047, 1050–51 (2d Cir.1984) (relief of accounting and imposition of constructive trust sought with respect to estate still subject to probate proceedings not subject to district court's jurisdiction).

In effect, plaintiff has conceded that she cannot request that this Court compel defendant to pay to her the above amounts and admits that it is the Surrogate's Court that must ascertain the *net* amount(s) due to plaintiff in an accounting proceeding.[7] Therefore, it is appropriate to grant defendant's motion to dismiss insofar as it relates to plaintiff's requests that defendant *pay over* to plaintiff the entire estate of Edith Campbell and attendant executor's fees.

■ Insofar as the remaining portion of the relief requested by plaintiff seeks a *declaration* that she is entitled to the entire estate of Edith Campbell, however, it is clear that this Court has the power to entertain plaintiff's claim. *See, e.g., Beach v. Rome Trust Co.,* 269 F.2d 367, 372 (2d Cir.1959) (prosecution of claim requesting construction of will declaring plaintiff to be owner of stock, and not seeking a distribution of that property, was within district court's jurisdiction). It is also clear that plaintiff's claim here would not interfere with the Surrogate's Court's present control over the *res* of Edith Campbell's estate. This is so because New York law specifically provides that a claimant may prosecute certain claims against an estate

7. *See, e.g.,* Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Dismiss at pp. 3–4.

in a state court of general jurisdiction. Specifically, SCPA § 1810 provides:

Nothing in this article [Article 18] shall prevent a claimant from commencing an action on his claim at law or in equity, provided that where a claim has been presented and rejected in whole or in part the action must be commenced within 60 days after such rejection.

Plaintiff's claim against Edith Campbell's estate, discussed *supra* at 2–3, was filed pursuant to article 18 of the SCPA and, therefore, could have been brought in a state court of general jurisdiction. Thus, plaintiff's request for relief, insofar as it seeks declaratory relief, is properly within the jurisdiction of this Court. *See Hermann v. Ludwig*, 186 A.D. 287, 296–97, 174 N.Y.S. 469 (2d Dep't 1919), *aff'd mem.*, 229 N.Y. 544, 129 N.E. 908 (1920) (remedy for beneficiaries of prior joint will is not to have Surrogate's Court invalidate second will and probate first will, but to bring action in equity in Supreme Court to compel and sustain performance of joint will contract).

It is therefore appropriate for defendant's motion to dismiss to be granted in part and denied in part, in a manner consistent with the above analysis. The next issue to be addressed, then, is whether this Court should abstain from considering plaintiff's request for a declaration that she is entitled to receive the entire estate of Edith Campbell.

*Abstention*

It is true that in certain cases a federal court should abstain from exercising jurisdiction over matters which, while not strictly within the probate exception to federal jurisdiction, are "on the verge" of falling within that exception. *Phillips, Nizer, Benjamin, Krim & Ballon v. Rosenstiel*, 490 F.2d 509, 516 (2d Cir.1973) (involving matters on the verge of matrimonial excep-

tion to federal jurisdiction). The defendant contends that this is such a case.

The parameters of the circumstances when a federal district court should abstain from deciding an issue properly before it have been set out by the United States Supreme Court in *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976), and *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). In addition to the traditional categories in which abstention is usually warranted,[8] *Colorado* described another type of circumstance that warrants abstention, namely, in the "exceptional circumstances" where "considerations of '[w]ise judicial administration, giving rise to conservation of judicial resources and comprehensive disposition of litigation'" would be best served. *Colorado, supra,* 424 U.S. at 817–18, 96 S.Ct. at 1246–47.

In the *Cone* case, the Supreme Court discussed the five factors to be considered in connection with a federal court's determination as to whether it should abstain from exercising its jurisdiction, based on the existence of such "exceptional circumstances." Those factors are, in essence:

(1) Assumption by either court of jurisdiction over a res or property, (2) convenience to the parties of one forum over the other, (3) avoidance of piecemeal litigation, (4) the order in which jurisdiction was obtained by the concurrent forums and (5) whether federal or state law provides the rule of decision on the merits.

*Giardina v. Fontana, supra,* 733 F.2d at 1053. Applying those considerations to the instant case, it is clear that the second and fifth factors are insignificant; both forums are convenient to the parties and either court must apply New York law. The first

---

8. These categories are:

(1) avoiding a federal constitutional issue by seeking a state determination of state law; (2) deferring to state resolution of difficult state law questions that involve important public policy or where federal review would be disruptive of state regulation or administration;

and (3) declining to restrain state criminal proceedings, collection of state taxes and the like.

*Giardina v. Fontana, supra,* 733 F.2d at 1052 (citing *Colorado River Water Conservation District v. United States, supra,* 424 U.S. at 814–16, 96 S.Ct. at 1244–46).

factor is of no consequence, because in any event, the Surrogate's Court will distribute the estate. Finally, the third and fourth factors lose their significance in light of the fact that defendant moved to dismiss plaintiff's objection to the probate of Edith Campbell's will in the Surrogate's Court *because her claim should have been brought in a court of general jurisdiction. See supra* at 2. Such a consideration also militated against abstention in *Giardina.*[9]

■ In view of the above considerations, I find that plaintiff has not presented a claim which warrants abstention from the exercise of federal jurisdiction. I therefore now turn to the merits of plaintiff's claim for specific performance of the joint will.

*Plaintiff's Motion for Summary Judgment*

As discussed above, the only aspect of plaintiff's claim that is properly before this Court is her request that she be declared to be entitled to the entire estate of Edith Campbell pursuant to the terms of the joint will. Defendant contends that the presence of allegedly ambiguous language in that will gives rise to several issues of fact regarding the testators' intent which would preclude summary judgment in plaintiff's favor. In essence, the defendant urges that issues of fact exist as to whether the testators intended (1) under paragraph Third of the will, to leave their estate to plaintiff only in the event of their simultaneous or near-simultaneous death; (2) under paragraph Fourth, to name plaintiff as executrix only in the event of simultaneous death; (3) under the penultimate paragraph, that *either* joint testator could revoke the joint will by executing a new will; and (4) that the joint will was to become irrevocable upon the death of Harry Campbell.[10]

Defendant asserts that the language of the joint will supports the conclusion that the testators always intended that the survivor of them could dispose of his or her estate by executing a new will. He urges that this construction is warranted due to the language in paragraph Second of the will, *supra* note 1, which purportedly conveys the earlier decedent's estate "to the survivor absolutely and without any limitation or restriction whatever." Defendant urges that this language created an absolute gift to the survivor, which the survivor could freely convey even if the joint will had not been revoked by both testators. In further support of this argument, defendant claims that the single word "us" in the penultimate paragraph of the will, *id.*, means "either of us," i.e., that the surviving testator could revoke the will. In addition, defendant maintains that the language in paragraphs Third and Fourth only convey interests to plaintiff in the event of the simultaneous or near simultaneous deaths of the testators, i.e., that these paragraphs constitute common disaster clauses.

■ These arguments are, however, unpersuasive. Under traditional New York law, a joint will acts as a contract which is binding upon the testators. "As a will an

---

9. As noted above, the probate court in *Giardina* specifically dismissed the plaintiff's claim on this basis, holding that it did not have jurisdiction to hear Giardina's claim because it was not a probate matter. The Court found that this fact "almost [made] out exceptional circumstances for keeping the case *in* the district court." 733 F.2d at 1053 (emphasis added). Although it is unclear why the Surrogate's Court here granted defendant's motion, that position was, in fact, the only basis for dismissal urged in defendant's motion and reply papers in the Surrogate's Court.

In holding that plaintiff's claim was properly before the district court, the *Giardina* court was also impressed by the facts that plaintiff's claim

was severable from the Florida probate court's administration of the trust, that no unsettled question of state law existed and that the special expertise of a state court or executive regulatory agency was not necessary to the resolution of that claim. 733 F.2d at 1052. Those considerations are the same in the instant case, and do not require plaintiff's claim to be adjudicated in the state court.

10. *See* Defendant's Statement Pursuant to Local Rule 3(g), ¶¶ 1–5. The other factual issues alleged in defendant's 3(g) Statement deal with the aspects of plaintiff's claim which have been dismissed, *supra* at 7.

instrument is revokable [sic] at pleasure, but as a contract, if supported by adequate consideration, it is enforceable in equity." *Rastetter v. Hoenninger,* 214 N.Y. 66, 71, 108 N.E. 210 (1915). While each of the testators can use the property during his or her lifetime, "after the agreement had been executed by one dying without making a different testamentary disposition of his property and after the acceptance by the other of the benefits of the agreement, the [joint will] became obligatory upon the other and enforceable in equity upon his death." *Id.* at 73, 108 N.E. 210. *See also Hermann v. Ludwig, supra,* 186 A.D. at 296–97, 174 N.Y.S. 469 ("he that dies first dies with the promise of the survivor, that the joint will shall stand"). Thus, if, in violation of a joint will, the surviving testator executes a subsequent will, "the courts will require its executor and beneficiaries 'to perform the contract' of their decedent." *Tutunjian v. Vetzigian,* 299 N.Y. 315, 319, 87 N.E.2d 275 (1949). The execution of a joint will therefore disables the testators from "making ... a different testamentary disposition after accepting the benefits of the [joint will] agreement." *Rastetter v. Hoenninger, supra,* 214 N.Y. at 74, 108 N.E. 210.[11] Furthermore, when the language of a contract is unambiguous, parol evidence as to the intentions of its parties cannot be considered. *See Tokio Marine & Fire Ins. Co. v. McDonnell Douglas Corp.,* 617 F.2d 936, 940 (2d Cir. 1980) (citing *National Utility Service, Inc. v. Whirlpool Corp.,* 325 F.2d 779, 781 (2d Cir.1963)).

Defendant's contentions regarding the intent of the testators with respect to the joint will lack merit for several reasons. First, as plaintiff correctly urges, the purported "absolute gift" language in paragraph Second of the joint will has been held *not* to permit the revocation of a joint will by a surviving testator. *Estate of Opal v. Commissioner,* 450 F.2d 1085, 1086–87 (2d Cir.1971) (citing *Tutunjian v. Vetzigian, supra* ). *See also Rich v. Mottek,* 11 N.Y.2d 90, 94–95, 181 N.E.2d 445, 226 N.Y. S.2d 428 (1962) (language in joint will indicating that survivor would be "sole heir" of first decedent did not negate irrevocability of joint will). *Cf. Matter of Zeh,* 18 N.Y.2d 900, 223 N.E.2d 43, 276 N.Y.S.2d 635 (1966) (in absence of language indicating irrevocability, "absolute gift" language of joint will would prevent performance of the joint will); *In re Wierzbieniec,* 93 A.D.2d 978, 461 N.Y.S.2d 653 (4th Dep't 1983) (same).

In addition, defendant's argument that paragraphs Third and Fourth of the will were intended to be common disaster clauses is incredible in view of the fact that the joint will expressly mentions that contingency in the third to last paragraph, *supra* note 1. Any specific direction with respect

---

11. These traditional New York rules with respect to joint wills have been somewhat modified by the recently enacted § 13–2.1(b) of the New York Estates, Powers and Trusts Law, which provides:

> A contract to make a joint will, or not to revoke a joint will, if executed after the effective date of this paragraph can be established only by an express statement in the will that the instrument is a joint will and that the provisions thereof are intended to constitute a contract between the parties.

N.Y. Est. Powers & Trust Law § 13–2.1(b) (McKinney Supp.1984). Although this statute only affects will contracts executed after its effective date of September 1, 1983, its enactment "may nevertheless influence the direction of the courts even in previously existing situations." *Margulis v. Teichman,* 125 Misc.2d 729, 479 N.Y. S.2d 953 (Surr.Ct. Nassau Co.1984) (citing Prof. Rohan, McKinney's Suppl. Prac. Commentaries, EPTL 13–2.1).

In the *Margulis* case, however, the court found that the requirements of EPTL § 13–2.1 had been met although that statute was inapplicable to the joint will there is controversy. 479 N.Y.S.2d at 956. This was so because the language of the will expressly stated that the joint testators had "agreed upon" the disposition of their property as set forth therein, and the will contained language indicating irrevocability as well. In addition, the court stated: "It is clear from case law pre-existing the recent amendment to EPTL 13–2.1 that if a joint will expressly recites within its provisions or by a separate instrument that it cannot be altered or revoked, it is contractually binding upon the survivor." *Id.,* citing *Tutunjian v. Vetzigian, supra,* and other authorities. The enactment of § 13–2.1 thus did not supplant in any way the traditional rules governing joint wills where irrevocability is expressly provided for in the will.

to the disposition of property in the event of simultaneous death could have been elaborated upon in that segment of the joint will.

Finally, plaintiff argues most persuasively that defendant's construction of the joint will would render that instrument meaningless or possibly cause the estate to pass into intestacy. Plaintiff argues:

> If defendant's suppositions are accepted as true, the Joint Will does not provide for any contingent beneficiaries *unless* there is a common disaster. Thus, according to defendant, if there was no common disaster and the surviving spouse did not execute a new will, the survivor's estate would pass by intestacy. This result is clearly preposterous since the purpose of executing wills is to avoid intestacy.

Similarly, defendant's contention that the word "us" in the penultimate paragraph of the will should be read as "either of us" would lead to a nonsensical result.[12]

■ In view of the above considerations and the undisputed fact that the agreement set forth in the joint will was executed upon the death of Harry Campbell, *see Rastetter v. Hoenninger, supra; Tutunjian v. Vetzigian, supra,* it is clear that the only meaningful construction of the joint will designates plaintiff as the intended beneficiary of Edith Campbell's estate. The language of the joint will is unambiguous, thus requiring the exclusion of any extrinsic evidence proffered by defendant. Plaintiff is therefore entitled to specific performance of the joint will, to be effectuated under the supervision of the Surrogate's Court.

*Conclusion*

For the reasons set forth above, defendant's motion to dismiss the complaint is granted with respect to the cause of action

seeking to compel defendant to pay plaintiff the entire estate of Edith Campbell and executor's fees, as those functions fall within the probate court's jurisdiction. Insofar as defendant's motion requests dismissal of or abstention from plaintiff's claim for specific performance, the motion is denied. In addition, plaintiff's motion for summary judgment compelling defendant to specifically perform the joint will of Harry and Edith Campbell is granted.

SO ORDERED.

---

12. As plaintiff points out in her Reply Memorandum at 8, defendant would have the penultimate paragraph read:

> "We have agreed upon the foregoing disposition of our property, and in consideration thereof, it is further agreed that this will shall be forever binding upon [either of us] and upon each of us, and shall bind our distributees and representatives and that this will shall not be revoked by [either of us] or by the survivor of [either of us] with the exception only that it may be revoked by a writing duly subscribed by [either of us] and executed with the formality of a will."