**In the Matter of the Application of The THOMAS AND AGNES CARVEL FOUNDATION, as Remainderman Under the Last Will & Testament of Thomas Carvel, Deceased, for a Restraint on the Transfer of Certain Funds.**

**In the Matter of the Application of The Thomas and Agnes Carvel Foundation, as Remainderman Under the Last Will & Testament of Thomas Carvel, Deceased, for a Restraint on the Conveyance or Encumbrance of Certain Real Property by Realities Trust, a New York resident intervivos trust.**

Nos. 98 Civ. 6284 (CLB),
98 Civ. 6283 (CLB).

United States District Court,
S.D. New York.

Jan. 22, 1999.

Orrick, Herrington & Sutcliffe LLP, New York City, for plaintiff.

Spitzer & Feldman, P.C., New York City, for defendant Pamela Carvel.

Office of the Attorney General of the State of New York, New York City, for defendant Attorney General of The State of New York.

**146**

## MEMORANDUM & ORDER

BRIEANT, District Judge.

By motion filed on November 9, 1998 and heard on December 30, 1998, the petitioner, The Thomas and Agnes Carvel Foundation (the "Foundation"), moves for remand of these two removed cases to the Westchester County Surrogate's Court where they were originally filed. The Foundation argues (1) that the Court lacks diversity jurisdiction over the 98 Civ. 6283 case and that it was improperly removed by a nominal party; (2) that the Court lacks jurisdiction over both cases under *Princess Lida of Thurn & Taxis v. Thompson,* 305 U.S. 456, 59 S.Ct. 275, 83 L.Ed. 285 (1939), because exercising federal jurisdiction over the cases would deprive the Surrogate's Court of its control over property in its jurisdiction; and (3) that the Court, if it finds it has jurisdiction over both cases or either case, should exercise its discretion to abstain from hearing the case(s) under *Colorado River Water Conservation District v. United States,* 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976). Pamela Carvel, in her individual capacity and as personal representative to the Estate of Agnes Carvel, filed opposition papers on November 10, 1998. The Foundation filed reply papers on November 9, 1998.

## BACKGROUND

Thomas Carvel ("Thomas"), a soft ice cream tycoon, died without issue on October 21, 1990, leaving his own residuary estate to the Foundation. Since that time, various parties interested in his estate ("Thomas' Estate")—including the Foundation and, until her recent death, his widow Agnes Carvel—have engaged in extensive, contentious but unresolved litigation before the Westchester County Surrogate's Court (the "Surrogate's Court") and elsewhere. One of the issues before the Surrogate's Court is the validity or enforceability of a reciprocal agreement between Thomas and Agnes to execute mirror image wills (the "Mirror Image Wills"). That agreement precludes the surviving party from "mak[ing] any gratuitous transfers of property or in any way chang[ing] the provisions of his or her will" following the death of the first to die (the

"Reciprocal Agreement"). The Mirror Image Wills were executed on February 13, 1988. Each will names the Foundation to receive the entire residuary estate after the payment of general legacies, satisfaction of a provision for support of the surviving spouse, if any, and the payment of certain expenses. Thomas' will, one of the Mirror Image Wills, was admitted to probate in the Surrogate's Court on February 25, 1991. All of the general legacies and expenses have been distributed, and the Foundation has been established.

On or about August 4, 1998, Agnes died in London, England. Pamela Carvel, a niece of Thomas, was named on the death certificate as "informant", but never informed the Foundation, Agnes' living family members, or the Surrogate's Court of Agnes' death. Agnes' Guardian Ad Litem appointed by the Surrogate discovered her death and informed the Foundation on August 7, 1998. On August 11, 1998, Pamela Carvel filed in a court in the United Kingdom a purported Last Will and Testament of Agnes Carvel executed in 1995 and naming Pamela Carvel as the sole executor of Agnes' Estate (the "1995 Will"). This Will was executed in apparent violation of the Reciprocal Agreement. The officers of the Foundation believed that Agnes, at the direction of Pamela Carvel, had also made several intervivos transfers in violation of the Reciprocal Agreement.

The Foundation then filed two petitions in the Surrogate's Court, one on August 12, 1998, and one on August 14, 1998, seeking relief from that Court to preserve the subject assets within that court's jurisdiction and to prevent the transfer of funds out of Thomas' Estate or out of a particular escrow fund, and the transfer of property from the Realities Trust which Realities Trust had received from Agnes in contravention of the Reciprocal Agreement. The first such petition in Surrogate's Court (the "Funds Petition") specifically seeks to restrain the transfer of (1) the undistributed payment from the Thomas Carvel Charitable Remainder Unitrust (the "Unitrust") to Agnes (the "Unitrust Funds"); (2) approximately $2,345,-348.70 transferred to Agnes under her claim of title by Chain Locations of America, Inc.,

which funds are currently held in escrow but previously were held in a joint account by Agnes and Pamela Carvel, allegedly in violation of the Reciprocal Agreement (the "Chain Funds"); and (3) any funds to which Agnes's Estate may be entitled pursuant to her claims against Thomas' Estate, including accumulated income (the "Estate Funds"), by any person with the power to transfer such funds. The Funds Petition therefore seeks injunctive relief against the Estate of Agnes Carvel, the five living executors of Thomas' Estate, and the trustees of the Unitrust, i.e., Adele Alexander (Unitrust trustee), Mildred Arcadipane (executor of Thomas' Estate and Unitrust trustee), Pamela Carvel (suspended executor of Thomas' Estate), Mary Ellen Cerrato (Unitrust Trustee), Robert M. Davis (suspended executor and incumbent Unitrust trustee), Betty Godley (executor of Thomas' Estate) and Herbert F. Roth (executor of Thomas' Estate). The Funds Petition also seeks a declaration of the validity of the Reciprocal Agreement, a determination that the Foundation is entitled to the subject funds, and an order awarding the subject funds to the Foundation.

The second petition, filed by the Foundation on August 14, 1998 in Surrogate's Court, seeks to restrain the transfer or encumbrance of certain real property to which the Foundation believes it is entitled (the "Real Property Petition"). The Real Property Petition seeks to restrain the transfer or encumbrance of (1) Agnes' former residence in Ardsley, New York; (2) Agnes' former residence in Atlantis, Florida; (3) a residence located at 228 Orange Tree Drive, Atlantis, Florida; and (4) a property located in Hartsdale, New York (the "Realities Properties"), all owned by Realities Trust, Inc., a New York resident intervivos trust holding title to the Realities Properties. The Real Property Petition therefore seeks injunctive relief against Pamela Carvel, in her capacity as trustee of Realities Trust. The Real Property Petition also seeks to impose a lis pendens on each of the Realities Properties, and seeks a declaration of the validity of the Reciprocal Agreement, a determination that the Foundation is entitled to the Realities Properties, and an order awarding title to the Realities Properties to the Foundation.

The Surrogate's Court issued an order to show cause and temporary restraining order with respect to each of the Petitions before they were removed. Pamela Carvel claims that the Foundation brought the Petitions before the Surrogate's Court to enforce the Reciprocal Agreement or get damages for breach of the Reciprocal Agreement, not simply to preserve assets and prevent the transfer of funds.

## DISCUSSION

### THE FUNDS PETITION, 98 CIV. 6283

■ The Foundation argues that the Court lacks diversity jurisdiction over the Funds Petition because the petitioner Foundation is a citizen of the State of New York and at least four of the defendants are citizens of the State of New York, meaning that the case lacks complete diversity. Godley (an incumbent executor of Thomas' Estate), Davis (a suspended executor and incumbent Unitrust trustee), Roth (an incumbent executor of Thomas' Estate), and Cerrato (an incumbent Unitrust trustee) are citizens of the State of New York. The Surrogate's Court recently suspended Arcadipane, another New York citizen, as executor and Unitrust trustee.

Pamela Carvel argues that all of the executors and trustees are "formal or nominal" defendants not to be considered when determining diversity jurisdiction. She claims that the only real parties in interest are herself and the Estate of Agnes Carvel because the factual background accuses Agnes Carvel of, *inter alia*, breaching the Reciprocal Agreement and accuses Pamela Carvel of various misdeeds, including knowing assistance of Agnes in connection with her actions in the matter.

It is true that only real and substantial interested parties are considered when determining whether diversity jurisdiction exists. *Navarro Sav. Ass'n v. Lee*, 446 U.S. 458, 460–61, 100 S.Ct. 1779, 64 L.Ed.2d 425 (1980). Here, however, the executors and trustees are real parties in interest. In *Rockmore v. New Jersey Fidelity & Plate Glass Ins.*, 65 F.2d 341, 344 (2d Cir.1933),

one of the defendants asserted that there was diversity jurisdiction because the defendant that otherwise would have destroyed diversity was a nominal party. The court rejected that contention, finding that

> [defendant] Alpha was a fiduciary having, with [the other defendant], possession of the 'Joint Loss Fund' of which the contributions of [the other defendant] were a part, and likewise having responsibility for its investment and control over its distribution. We think Alpha was an indispensable party. Moreover, even if Alpha was not an indispensable party, it had been charged with obligations to invest the fund and to supervise its distribution. This would seem to have given it a personal interest in the controversy and to have made it more than a nominal or formal party. In such a situation diversity of citizenship must exist to confer jurisdiction.

*Id.* Like the fiduciary defendant in *Rockmore,* the incumbent executors of Thomas' Estate and the incumbent Unitrust trustees in this case are fiduciaries who supervise and control investment and distribution of the trust and other assets subject to the Funds Petition. The incumbent executors and Unitrust trustees are therefore real parties in interest. Because their temporary suspensions might be lifted at any time, the suspended executors are also real parties in interest.

Pamela Carvel also argues that these so-called defendants actually are aligned with the "plaintiff" Foundation and that the Foundation has named them as defendants only to avoid diversity jurisdiction. This Court rejects that argument. The incumbent executors' and Unitrust trustees' interests are at odds with the interests of the Foundation, making them properly aligned as defendants.

Our Court of Appeals uses a "collision of interests" test to determine the proper alignment of the parties. *Maryland Cas. Co. v. W.R. Grace & Co.,* 23 F.3d 617, 622 (2d Cir.1993). Under this test, "@ourts require the existence of an actual, substantial controversy, or a collision of interests, but the conflict may in some cases concern an issue other than the so-called primary issue in dispute. This approach is more flexible because it permits courts deciding whether diversity exists to consider the multiple interests and issues involved in the litigation." *Id.* The Funds Petition, if granted, would restrain the incumbent executors and Unitrust trustees from transferring funds that they otherwise have the power and duty to transfer. Their interest is in fulfilling their duties and exercising their rightful powers, while the Foundation's interest is in preventing them from doing so.[1] In other words, the incumbent executors and Unitrust trustees have the duty sought to be enjoined. This is a collision of interests sufficient to align the Foundation on the one hand, and the executors and trustees on the other hand, on opposite sides of this case, consistent with the pleadings as filed.

Having found that the incumbent executors of Thomas' Estate and the incumbent Unitrust trustees are real parties in interest who are properly aligned as defendants for the purposes of the Funds Petition, the Court concludes that the Funds Petition, docket number 98 Civ. 6283, lacks complete diversity and must be remanded to the Westchester County Surrogate's Court for lack of subject matter jurisdiction. The motion to remand is granted.

## THE REAL PROPERTY PETITION, 98 CIV. 6284

The Foundation does not assert that the Real Property Petition lacks complete diversity, because the only defendants are Agnes and Pamela Carvel. Agnes was a citizen of the United Kingdom and Pamela Carvel is a citizen of Florida. The Foundation argues instead that both the Funds Petition and the Real Property Petition must be remanded under the doctrine of *Princess Lida* because

---

1. The Verified Answer of two of the incumbent Unitrust trustees to the Funds Petition, submitted to this Court without objection during the Oral Argument of the Foundation's Motion to Remand, indicates that two incumbent Unitrust trustees, Cerrato and Alexander, assert that "it would be wholly inappropriate, improper and a breach of the fiduciary duties for the Unitrust trustees to make a distribution to the Foundation without an Order of this Court directing the Unitrust to do so."

exercising federal jurisdiction over these cases would deprive the Surrogate's Court impermissibly of the control it has necessarily asserted over the subject property. The Foundation argues in the alternative that the Court, if it finds it has jurisdiction over both cases or either case, should exercise its discretion to abstain from hearing the case(s) pursuant to the Supreme Court's decision in *Colorado River.* In light of the Court's finding that it does not have jurisdiction over the Funds Petition, docket number 98 Civ. 6283, for lack of complete diversity, these arguments will be addressed only as to the Real Property Petition.

The Real Property Petition seeks five types of relief reflected in the Surrogate Court's August 17, 1998 Order to Show Cause as follows:

> [A]n order ... pursuant to sections 202, 207 and 210 of the Surrogate's Court Procedure Act:
>
> a. preliminarily and permanently restraining the conveyance by Pamela Carvel, and/or from the Realities Trust, to any person other than the Foundation, or the encumbrance of: [The Realities Properties];
>
> b. causing a *lis pendens* to be placed on each of the Realities Properties;
>
> c. declaring the Reciprocal Agreement to be a valid agreement enforceable by the Foundation;
>
> d. determining that the Foundation is entitled to the Realities Properties; and
>
> e. awarding title to the Realities Properties to the Foundation.

The Foundation's arguments for remand must be applied to each type of relief sought in the Petition individually because application of these doctrines depends on the type of relief sought.

Pamela Carvel argues (1) that the probate exception to federal diversity jurisdiction does not apply; (2) that the only issue before this court is the alleged breach of the Reciprocal Agreement; (3) that the Surrogate's Court does not have jurisdiction over this dispute; (4) that *Princess Lida* is inapplicable because this is a contract case or at the very most seeks "merely an adjudication of

[the Foundation's] right ... [to] a fund in the possession of the state court;" and (5) that *Colorado River* abstention would be inappropriate in this case because the presumption is in favor of and the factors weigh in favor of retaining jurisdiction.

As an initial matter, the Foundation does not assert that the probate exception applies to any aspect of this case so that argument will not be considered.

Second, as noted above, the contract dispute is not the only issue before this Court because the Foundation is seeking five types of relief, each of which must be addressed in turn.

**Subject Matter Jurisdiction**

*Lis Pendens*

■ The Foundation's request for entry of a *lis pendens* is the easiest type of relief to address. The New York CPLR limits the common-law doctrine of *lis pendens* and states the conditions under which interests in real property may be affected and constructive notice of outstanding claims may be given to purchasers. The modern statute requires that a notice of pendency be filed by the plaintiff in the appropriate land records office, and does not grant courts jurisdiction otherwise to enter notices of pendency. *See* New York CPLR § 6501 (1999) (popularly known as the lis pendens act). Thus, no court may enter a *lis pendens* as the Foundations requests; the Foundation must file a notice of pendency itself, if so advised.

*Preliminary and Permanent Restraint of Transfer*

■ The Foundation's claim for a preliminary and ultimately a permanent injunction restraining the conveyance by Pamela Carvel, as trustee of Realities Trust, from Realities Trust of any of the Realities Properties falls within the doctrine set out by the Supreme Court in *Princess Lida.* In *Princess Lida,* the Court held that

> if two suits are in rem, or quasi in rem, so that the court, or its officer, has possession or must have control of the property which is the subject of the litigation in order to proceed with the cause and grant the relief

sought the jurisdiction of the one court must yield to that of the other. We have said that the principle applicable to both federal and state courts that the court first assuming jurisdiction over property may maintain and exercise that jurisdiction to the exclusion of the other, is not restricted to cases where property has been actually seized under judicial process before a second suit is instituted, but applies as well where suits are brought to marshal assets, administer trusts, or liquidate estates, and in suits of similar nature where, to give effect to its jurisdiction, the court must control the property. The doctrine is necessary to the harmonious cooperation of federal and state tribunals.

*Princess Lida*, 305 U.S. at 466, 59 S.Ct. 275. If this Court were to exercise jurisdiction over this claim and grant the requested relief, it certainly would be interfering with the Surrogate's Court's existing control over the property.

There is no dispute that the claim first was filed in a state court. This action was removed from the Surrogate's Court. There also is no dispute that the Surrogate's Court acted upon this claim prior to removal by signing an Order to Show Cause (the "OTSC") and granting a Temporary Restraining Order (the "TRO"). In addition, the Surrogate's Court extended that restraining order until the motion for a preliminary injunction was decided and that restraining order thus remains currently in effect. The Surrogate's Court clearly has taken control of the property subject to this claim for injunctive relief by restraining its transfer or encumbrance.

Pamela Carvel argues that this claim falls outside the doctrine delineated in *Princess Lida* because, as *Princess Lida* states, "The doctrine .... has no application to a case in a federal court based upon diversity of citizenship, wherein the plaintiff seeks merely an adjudication of his right [to] his interest as a basis of a claim against a fund in the possession of a state court.... [A]n action in federal court to establish the validity or the amount of a claim constitutes no interference with the State court's possession or control of a res." This argument may be applicable to

the Foundation's other claims for relief, but its claim for injunctive relief requires action by this Court beyond a determination of rights.

In light of this, Pamela Carvel's reliance on *Markham v. Allen*, 326 U.S. 490, 495, 66 S.Ct. 296, 90 L.Ed. 256 (1946), which held that there was jurisdiction over a claim *to determine a right* to a share in a decedent's estate, *Beach v. Rome Trust Co.*, 269 F.2d 367 (2d Cir.1959), and *Lamberg v. Callahan*, 455 F.2d 1213 (2d Cir.1972), is misplaced because *Markham*, *Beach* and *Lamberg* said nothing more than *Princess Lida*. *See Markham*, 326 U.S. at 494, 66 S.Ct. 296 ("[F]ederal courts of equity have jurisdiction to entertain suits in favor of creditors, legatees and heris'[sic] and other claimants against a decedent's estate to establish their claims *so long as* the federal court does not interfere with the probate proceedings or assume general jurisdiction of the probate or control of the property in the custody of the state court.") (emphasis added); *Beach*, 269 F.2d at 369 ("We hold that as to those claims the prosecution of which would constitute an interference with the previously attached quasi in rem jurisdiction of the Surrogate's Court the district Court's order of dismissal was correct."); *Lamberg*, 455 F.2d at 1216 (citing *Markham*, 326 U.S. at 494, 66 S.Ct. 296). None of the other cases cited by Pamela Carvel are to the contrary. Thus, Pamela Carvel's argument fails.

■ Pamela Carvel also argues that the Surrogate's Court cannot have taken control over the property because it does not have jurisdiction to enter an injunction based on the Reciprocal Agreement. The Court rejects this contention. Under the Surrogate's Court Procedure Act, the Surrogate's Court "shall continue to exercise full and complete *general jurisdiction in law and equity* to administer justice in *all matters* relating to estates and the affairs of decedents." NY SCPA § 201(3) (emphasis added). This includes the interpretation of agreements not to deplete assets or make a new will, and the granting of appropriate equitable relief. This also includes the administration of a lifetime trust which has assets in the state. NY SCPA § 207. It is of no consequence

that the claim could also be brought in the New York Supreme Court, *see Beach v. Rome Trust Co.*, 269 F.2d at 371–72 ("[T]he fact that the Supreme Court of New York has coordinate jurisdiction of these claims [is irrelevant in light of] the policy of the New York courts to concentrate in the hands of the Surrogate all matters affecting the administration of estates, and this policy appears to proceed from, or indeed to define, the nature of the Surrogate's jurisdiction as quasi in rem."), or that it is brought in the context of an Estate proceeding. *See* N.Y. SCPA § 202. Thus, the Surrogate's Court has jurisdiction over this claim.

Based on the foregoing, this Court concludes that it does not have jurisdiction over the Foundation's claim for a preliminary and ultimately a permanent injunction restraining the conveyance by Pamela Carvel, as trustee of Realities Trust, from Realities Trust of any of the Realities Properties.

*Award of Title to the Realities Properties to the Foundation*

■ The Foundation's claim for an award of title to the Realities Properties, that is a transfer of title from Realities Trust to the Foundation as distribution under the Mirror Image Wills, also falls squarely within the *Princess Lida* doctrine. *Beach,* one of the cases on which Pamela Carvel primarily relies to argue that *Princess Lida* does not apply, actually requires that this Court find lack of jurisdiction over this claim for relief. In *Beach,* Our Court of Appeals held that "the [*Princess Lida* ] rule governs the plaintiff's demand for a distribution to her . . . since such a distribution before final accountings would run the hazard of conflict with the Surrogate's determination of the accounts of both the trust and the estate." *Id.* at 371. The court also noted, "This principle is so firmly rooted in our law as to have required and not merely permitted [the district court] to dismiss the plaintiff's claims insofar as they sought [a distribution]."

Pamela Carvel makes the same arguments against remand of this claim. For the same reasons stated in the Court's discussion of the claim for injunctive relief, the Court rejects these arguments. In addition, the Court notes that it would be absurd to argue

that the New York Surrogate's Court does not have jurisdiction over the distribution of the assets of an estate or lifetime trust.

Based on the foregoing, the Court concludes that it does not have jurisdiction over the Foundation's claim for distribution to the Foundation of the Realities Properties under the Mirror Image Wills.

*Declaratory Judgment of Enforcibility of the Reciprocal Agreement By the Foundation and Entitlement to the Realities Properties Under the Mirror Image Wills*

■ The Foundation's claim for relief in the form of a judgement declaring the Reciprocal Agreement valid and enforceable by the Foundation as third party beneficiary and the Foundation's claim for relief in the form of a judgment declaring that it is entitled to the Realities Properties under the Mirror Image Wills do not fall within the doctrine of *Princess Lida. See Giardina v. Fontana,* 733 F.2d 1047 (2d Cir.1984); *Lamberg,* 455 F.2d 1213; *Beach,* 269 F.2d 367; *Dannhardt v. Donnelly,* 604 F.Supp. 796 (E.D.N.Y.1985). This Court therefore has subject matter jurisdiction over these claims.

In *Giardina,* one of the plaintiff's claims was that the assignment of her interest in her deceased father's estate was obtained by undue influence and fraud. The principal relief requested was a declaratory judgment that the assignment was null and void. *Id.* at 1050. Our Court of Appeals held that "the district court could have exercised subject matter jurisdiction over [this claim] . . . . [because t]his relief could be granted without in any way interfering with the probate proceeding . . . or the estate being administered." *Id.* The court in *Giardina* addressed only the argument that this claim fell within the probate exception to federal diversity jurisdiction; it did not address the *Princess Lida* doctrine. Other decisions of the Court of Appeals that have addressed the *Princess Lida* doctrine with respect to requests for this type of relief nonetheless have found there to be subject matter jurisdiction.

*Lamberg,* for example, involved reciprocal wills by a husband and wife who "made an agreement to execute mutual and reciprocal wills that would not be revoked." *Lamberg,*

455 F.2d at 1215. After the wife's death and after the surviving husband had succeeded to a major part of her estate, he executed a will with a different testamentary scheme. The Executor and beneficiaries of the wife's estate sued the Executor of the husband's estate upon the husband's death. The facts are analogous to the facts in this case. Although the court in *Lamberg* based its opinion on the jurisdiction of the Connecticut Probate Court, which is significantly narrower than the New York Surrogate's Court, the court's analysis of *Princess Lida's* effect on the contract claim in that case is instructive in determining this Court's jurisdiction over this contract claim. The Court of Appeals in *Lamberg* sustained the district court's subject matter jurisdiction, finding that plaintiff's claim for damages and other recovery for breach of contract was a claim to establish his rights under the contract and did not interfere with the probate court's control over the property. *Id.* at 1216 ("[I]t has been established by a long series of decisions of this Court that federal courts of equity have jurisdiction to entertain suits in favor of creditors, legatees and heirs and other claimants against a decedent's estate to establish their claims.").

In *Beach,* the plaintiff sought a declaration that she was entitled to certain assets pursuant to a will then being administered by the Surrogate's Court. The Court of Appeals held, "Insofar as the third cause of action seeks construction of the will of [decedent] to declare plaintiff the owner of the stock she claims, and not a distribution of specific property, its prosecution would not constitute an interference with the jurisdiction of the Surrogate and the claim is therefore not within the [*Princess Lida* ] rule." *Id.* at 372. The court distinguished claims for distribution of property from claims "seeking a judgment in personam declaring the plaintiff entitled to receive from the fiduciary an interest in the estate," *id.,* and found that the district court had subject matter jurisdiction over a claim for a declaratory judgment of his right to share in the estate, even though the judgment would involve construction of the will.

District courts, relying on the cases discussed above, have also found that federal district courts have subject matter jurisdiction over declaratory judgment claims similar to those in this case. For example, in *Dannhardt,* the plaintiff sought a declaration that one of two Joint Wills, executed pursuant to an agreement not to change the testamentary scheme after one party died, was valid and entitled her to receive the entire estate. Judge Glasser of the Eastern District of New York held that the court had subject matter jurisdiction over the claim: "Thus, plaintiff's request for relief, insofar as it seeks declaratory relief, is properly within the jurisdiction of this Court." *Id.* at 800–801 (citing *Beach,* 269 F.2d at 372). This Court concludes that the Foundation's request for declaratory relief with regard to the Reciprocal Agreement and the Mirror Image Wills is within the subject matter jurisdiction of this Court.

## Abstention

This Court lacks subject matter jurisdiction over every claim for relief other than the claims for declaratory judgement because all of the non-declaratory claims for relief in the Real Property Petition require entry of an injunction affecting the Surrogate's Court's control over the Realities Properties. Thus, the only relief requested in the Real Property petition over which this Court has subject matter jurisdiction is a declaration of the Foundation's rights under the Reciprocal Agreement and the Mirror Image Wills. Having determined that the Court has subject matter jurisdiction over the Foundation's claims for declaratory relief, the Court now must consider whether it should abstain from exercising jurisdiction.

The parties assert that the Supreme Court's decision in *Colorado River* governs this Court's analysis of whether abstention would be appropriate in this action. The parties fail, however, to address the effect of the Supreme Court's decision in *Wilton v. Seven Falls Co.,* 515 U.S. 277, 115 S.Ct. 2137, 132 L.Ed.2d 214 (1995), on the applicability of the *Colorado River* analysis to declaratory judgment actions. In *Wilton,* the Supreme Court held unanimously that declaratory judgment actions brought during the pendency of a parallel state proceeding vest district courts with far greater discretion to abstain than the discretion described in *Colo-*

*rado River. Id.* at 279, 115 S.Ct. 2137 (citing *Brillhart v. Excess Ins. Co.,* 316 U.S. 491, 62 S.Ct. 1173, 86 L.Ed. 1620 (1942); *Colorado River,* 424 U.S. 800, 96 S.Ct. 1236 (1976)) and 288 ("In the declaratory judgment context, the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration.").

▮ The Foundation's claims for declaratory relief will therefore be analyzed under the less restrictive test of *Wilton.* Under *Wilton,* the relevant inquiry is whether a declaratory judgment issue can better be settled in a parallel state proceeding "presenting opportunity for ventilation of the same state law issues," with a presumption in favor of state adjudication. *Id.* at 290, 115 S.Ct. 2137. The *Wilton* Court relied on *Brillhart v. Excess Ins. Co. of America,* 316 U.S. 491, 62 S.Ct. 1173, 86 L.Ed. 1620 (1942), for guidance in determining what factors the district court should examine in considering abstention. *Id.* at 283, 115 S.Ct. 2137. The Court found that the district court should examine the scope of the pending state proceeding, the nature of available defenses there, and whether the claims of all parties in interest could satisfactorily be adjudicated there. *Wilton,* 515 U.S. at 290, 115 S.Ct. 2137; *Brillhart,* 316 U.S. at 495, 62 S.Ct. 1173. The *Brillhart* Court also noted that "[o]rdinarily it would be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgement suit where another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties. Gratuitous interference with the orderly and comprehensive disposition of a state court litigation should be avoided." *Brillhart,* 316 U.S. at 495, 62 S.Ct. 1173.

Our Court of Appeals analyzed under *Brillhart* a case very similar to this case. *See Fay v. Fitzgerald,* 478 F.2d 181, 183 (2d Cir.1973). In *Fay,* the court held that the Surrogate's Court could better settle the controversy over plaintiff's rights as distributee because "the questions are not federal; preparations to determine them have gone forward in Surrogate's Court; . . . [and] the state tribunal has jurisdiction of the rival claimants." The court further found that under these circumstances, "it would obviously be 'uneconomical as well as vexatious' for the federal court to proceed in this declaratory judgment suit raising precisely the same issue which will necessarily be decided by the Surrogate's Court." *Id.* at 183 (citing *Brillhart,* 316 U.S. at 495, 62 S.Ct. 1173). The court distinguished *Beach* on the ground that in that declaratory judgment case, the state court proceeding would not determine all the issues tendered in the federal suit. *Id.* at n. 2.

This Court is faced with the same situation presented to the court in *Fay.* The same declaratory judgment claims were brought in the Surrogate's Court by the same parties against the same parties. The Surrogate's Court not only has jurisdiction over them, it took action on them before the case was removed. State law alone provides the rule of decision. Also, because this Court must remand some of the claims in the Real Property Petition for lack of subject matter jurisdiction, retention of the other claims in the Real Property Petition would lead to piecemeal litigation. Furthermore, the factual issues arise out of a long, drawn-out and as yet inconclusive battle over the administration of Thomas' Estate, over which the Surrogate's Court has exercised jurisdiction since his death in 1991. Not only is the Surrogate's Court able to adjudicate all these claims; the Surrogate's Court, in fact, is best situated to adjudicate these claims. The Court thus concludes that it is appropriate to exercise its broad discretion to abstain from hearing these declaratory judgment claims.[2] *See Machat v. Sklar,* 1997 WL 599384 (S.D.N.Y.

---

2. The *Colorado River* factors also weigh in favor of abstention in this case, with the exception of the convenience-of-the-forum factor which is irrelevant here. The Surrogate's Court has assumed jurisdiction over the res; the remand of only portions of the Real Property Petition will lead to piecemeal litigation; the Surrogate's Court proceeding has been pending since 1991 and the Petition was filed there first; there is no federal plaintiff to protect; and state law provides the rule of decision. Under these circumstances, abstention would be appropriate even under the higher standard set forth in *Colorado River. See Colorado River,* 424 U.S. at 818, 96 S.Ct. 1236.

Sept. 29, 1997) (Sotomayor, J.) (abstaining under *Wilton* even though a federal question was present, where there was concurrent jurisdiction in the state probate proceeding, the claims for relief and the parties involved in the state proceeding were substantially similar to those in the federal proceeding, and dual proceedings would lead to piecemeal litigation).

The Court in its discretion dismisses the declaratory judgment claims without prejudice and remands the remainder of the Real Property Petition to the Surrogate's Court. The Surrogate has already entered the OTSC and TRO with regard to this Petition and there is no reason to believe that the litigants will not get a reasonably prompt determination of the claims upon remand. *See Fay*, 478 F.2d at 184 ("Perhaps the district court could have stayed its proceedings to await the state determination, rather than dismiss outright, but in the current circumstances there would be no point to such an order.").

## CONCLUSION

The Clerk of the Court shall file two final judgments consistent with the foregoing.

SO ORDERED.